144 So. 447

## YARBROUGH v. MALLORY.
### 7 Div. 111.

Supreme Court of Alabama.

Oct. 6, 1932.

Rehearing Denied Nov. 10, 1932.

580

Merrill, Jones, Whiteside & Allen, of Anniston, for appellee.

James F. Matthews, of Anniston, and Harsh, Harsh & Hare, of Birmingham, for appellant.

BOULDIN, J.

The action was for personal injuries received in a collision of a truck driven by defendant's servant with plaintiff's motorcycle.

There was verdict and judgment for plaintiff.

Motion for a new trial was made by plaintiff because of inadequacy of the damages assessed by the jury, which motion was overruled.

This ruling presents the sole question for review on this appeal.

The rules governing the review of the rulings of trial courts on motions for new trial upon the ground of excessive or inadequate damages in various forms of tort actions have been often considered and applied in this court.

In National Surety Co. v. Mabry, 139 Ala. 217, 225, 35 So. 698, 700, a case of malicious prosecution, involving injuries for which there is no fixed measure of damages, it was said: " * * * when the damages allowed are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of, the merits of the case, the court may interfere and set it aside. Sedgwick on Measure of Damages (7th Ed.) 655, note 'a,' as to excessive damages."

This case further quoted approvingly from Lord Mansfield in Gilbert v. Burtenshaw, Cowper, 230, declaring a new trial should be granted for award of damages "which manifestly show the jury to have been actuated by passion, partiality or prejudice. But it is not to be done without very strong grounds, indeed, and such as carry internal evidence of intemperance in the minds of the jury."

And again from Judge Story in Whipple v. Cumberland Manufacturing Company, Fed. Cas. No. 17,516, 2 Story, 661, holding the verdict should not be set aside for excessive damages "unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law, by which the damages are to be regulated."

In Montgomery Light & Traction Co. v. King, 187 Ala. 619, 65 So. 998, L. R. A. 1915F, 491, Ann. Cas. 1916B, 449, a case of personal injury, involving damages not measurable by any legal standard, and the question for review was inadequacy of the damages awarded, this court, after quoting and approving the opinion in Moseley v. Jamison, 68 Miss. 336, 8 So. 744, 745, declared: "In a case like this a trial court is by the law—which protects and provides for trials by jury—invested with no right to set aside such a verdict upon the ground of excessiveness or inadequacy alone unless the amount allowed by the verdict is so excessive or inadequate as to plainly indicate that the verdict was produced 'by passion or prejudice or improper motive.' "

The expression, "passion, prejudice or improper motive," has become quite a favored one in our decisions. Alabama Great Southern R. Co. v. Randle, 215 Ala. 535, 112 So. 112; Alabama Fuel & Iron Co. v. Andrews, 215 Ala. 92, 109 So. 750; Mobile & Ohio R. R. Co. v. Brassell, 188 Ala. 349, 351, 66 So. 447.

Other cases have added other terms or varied the form of expression, such as "prejudice, passion, partiality, or corruption." Whitman's Fifth Ave. Garage Co. v. Ricks, 211 Ala. 527, 101 So. 53, 55.

Again we have said (Veitch v. Southern Ry. Co., 220 Ala. 436, 437, 126 So. 845, 846): " * * * the universal rule is not to reverse on that account unless the amount is so excessive or inadequate as to indicate prejudice, passion, partiality, or corruption,' or some other controlling sentiment. Whitman's Fifth Ave. Garage Co. v. Ricks, 211 Ala. 527, 101 So. 53, 55; L. & N. R. R. Co. v. Robinson, 213 Ala. 522, 105 So. 874; Cent. of Ga. Ry. Co. v. White, 175 Ala. 60, 56 So. 574; Montgomery Lt. & Traction Co. v. King, 187 Ala. 619, 65 So. 998, L. R. A. 1915F, 491, Ann. Cas. 1916B, 449; M. & O. R. Co. v. Brassell, 188 Ala. 349, 66 So. 447; Miller v. So. Bell Tel. Co., 195 Ala. 408, 70 So. 730; B'ham Water Works Co. v. Watley, 192 Ala. 520, 68 So. 330; B'ham Macaroni Co. v. Tadrick, 205 Ala. 540, 88 So. 858."

And, in the same case, it must be "so excessive as to manifest bias, passion, prejudice or the like." Veitch v. Southern Ry. Co., supra.

These terms are to be taken in an inclusive sense to safeguard the right of trial by jury, by surrounding the verdict with all reasonable presumptions in its favor. Thus bias, meaning "to incline to one side" (Webster's New International Dictionary), or passion, "moved by the feelings or emotions" (Webster's International Dictionary), may include "sympathy" as a moving influence; and there need be no "conscious violation of duty." Veitch v. Southern Railway Co., supra. See, also, Jackson v. Roddy, 224 Ala. 132, 139 So. 354.

So it may be said "prejudice" includes forming an opinion "without due knowledge or examination." Webster's International Dictionary.

Nor is it necessary that the court should inquire and declare what wrongful influence, or failure of duty in the consideration of the case, has wrought a gross miscarriage of justice.

For reasons of public policy, the deliberations of the jury cannot be invaded to find what motive or influence worked the mischief. The record may or may not shed light on the subject.

The internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data.

Mr. Justice Sayre, dealing with a case where the court sitting as a jury had rendered a judgment which "must have been the result of inadvertence," wisely said: "This court deals with results."

Accordingly, speaking of prejudice, partiality, etc., in Alabama Great Southern R. Co. v. Randle, 215 Ala. 535, 112 So. 112,

113, Mr. Justice Somerville decided: "This rule does not deny that there may be cases, even of injuries not measurable by any legal standard, where the proven injuries are so severe and extensive that a court would be fully justified in setting aside a grossly inadequate verdict; that is, one which fails to give substantial compensation for substantial injuries."

This holding was quoted and approved in the late case of Jackson v. Roddy, 224 Ala. 132, 139 So. 355.

The basic reason for disturbing the verdict of a jury because of excessive or inadequate damages is precisely the same as for disturbing it because not supported by the evidence, or because opposed to the clear and convincing weight of the evidence. In the one case the inquiry is directed to one feature of the verdict; the damages awarded.

■ Speaking of the power and duty of the trial court in dealing with a verdict for inadequate damages, this court recently held: "That the credibility of witnesses is involved, that opinion evidence of value, not conclusive upon the trior of fact, is to be considered, and that there is no yardstick to measure the damages for physical pain and suffering, does not withdraw the case from the supervisory power of the trial court over the verdicts of juries. In all these matters he is in like position with the jury, and clothed with the power and duty to relieve against verdicts, which, allowing all reasonable presumptions in their favor, are still found to be clearly wrong and unjust from any cause, whether by reason of passion and bias, or from mistake, inadvertence, or failure to comprehend and appreciate the issues." Birmingham News Co. v. Lester, 222 Ala. 503, 504, 133 So. 270.

We adhere to these views.

■ The review of this ruling is governed by Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738, viz.: The trial court will not be reversed for refusing to disturb the verdict, "unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."

The verdict was for $1,000.

■ Plaintiff suffered a fracture of both bones of the left leg just above the ankle; a severe compound fracture. The large bone and surrounding tissues were crushed, the bone broken or shivered into fragments for a length of about one inch. These fragments and overlying parts were removed, the two ends prepared, brought together, fastened in place by a Lane plate, and the leg put in a plaster cast.

The small bone overlapped and healed in due time. For some five months there was no union and healing of the large bone. A screw holding the plate in position gave way. A metal brace was then designed.

There is not entire harmony in the opinions of the surgeons as to the condition at the time of the trial, eleven months after the injury. The jury were warranted in finding that a fairly stabilized union of the large bone had been effected, and that before long the fracture would be healed. The leg will be permanently one inch shorter.

The metal plate with loose screws was still there, calling for a further operation for its removal.

The evidence discloses a painful wound, and plaintiff testifies to continued and intermittent pain. He was on crutches to the time of the trial, and advised to continue so for a few months.

Without conflict the evidence discloses reasonable expenses for surgeons' services, $280, and a hospital bill of $141, total $421. The reasonableness of the latter is not directly shown, but it appears plaintiff was there confined fourteen days, during which an operation was had and X-ray pictures taken.

Touching further pecuniary damages, we quote the following testimony of plaintiff:

"Up to October 18, 1930, I was in good health and strength, with no broken leg or crippled member. Up to that time I was engaged in the market, grocery and dry cleaning business, here in Anniston. The businesses were close to each other, and I had been conducting part of them for the past ten years.

"I am 31 years old. The businesses were mine exclusively. They required my personal services to be carried on. In my judgment the reasonable value of my personal services in that business up to the time I was hurt was something like $300.00 a month. My market was a meat market. I had to cut meat. I worked the dry cleaning business jointly with it. I attended to every part of my business before I was hurt.

"For three months after I was hurt I was unable to give any substantial attention to my business. After that and up to now I have been able to give very little attention to the business. I dropped the meat market and grocery business, had to drop it. I am trying to conduct the dry cleaning business now. I cannot give it the work and attention I ought to. For the past few months I have been able to give about half the work and attention to the dry cleaning business, since I have been able to give it any attention at all."

Cross-examination:

"In my opinion my services at the time I was injured were worth $300.00 a month. I was making practically that much net profit a month at the time. I had been making that much only a short time. I had been in business almost ten years. I had been making the $300.00 net profit from my business only for four or five months before I was hurt. Sometime before that I got frigidaire equipment for refrigeration and opened the dry cleaning plant. In my opinion during the months of September, August, July and June, 1930, I made a net profit out of my business of $300.00 a month. I haven't exactly kept up with everything. After I was hurt the market and grocery business was a loss until I closed them down about three months ago. The dry cleaning does very well.

"I drive an automobile, have been driving one for 7 or 8 months, use it in my business for going about and delivering clothes. Before I was injured I used a motorcycle and a car too."

This was all the evidence on this subject.

Plaintiff's counsel insist that lost time or lost earnings should be figured $300 per month for three months and $150 per month for 8 months; total $2,100. Manifestly this evidence discloses only an estimate, and the jury were fully warranted in so treating same, and considering it in the light of the interest of plaintiff.

Viewing this evidence in the light of the entire record, as insisted by appellee, we are impressed that, at all events, a reasonable allowance for lost time or earnings due to this injury could not fall substantially below $579, the amount awarded over and above the actual outlays above mentioned.

We are convinced this verdict covers no substantial damages for pain and suffering, nor for permanent injury. Without dispute this leg will always be one inch shorter than the other. Minimized as it may be, we need say no more than that this is a substantial permanent injury. We are clearly convinced this verdict does not award substantial damages for substantial injuries.

The judgment is reversed, and one here rendered granting a new trial.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

On Rehearing.

BOULDIN, J.

Appellee, on rehearing, calls attention to our omission of any reference to a motion made to strike certain original documents on the ground that they are not properly part of the record; and insists the question of quantum of damages was not reviewable in the absence of all the evidence before the jury.

These documents consist of three X-ray pictures of the injured parts of plaintiff's person, and a map or plat of the locus in quo. They were originally sent up, duly certified, pursuant to a certiorari issued out of this court on motion of appellant. His motion was upon two grounds: (1) Diminution of the record; (2) that they are such objects as should be separately certified under Supreme Court Rule 47. As to the X-ray pictures, the motion to send up alleged they could not be properly examined if incorporated in the record under such rule, in that it is impractical to properly superimpose same against the light.

Dealing with the first ground, diminution of the record, it appears from the record two of these X-ray pictures were Exhibits 1 and 2, attached to the deposition of Dr. Scott. The deposition is incorporated in the bill of exceptions and copied in the record. Aside from the record, the trial judge, in his order made after the papers were sent here, refers to them as attached as exhibits to such deposition. We conclude they were part of such deposition, and to be considered part of the record, the same as other portions of such deposition.

If they had become detached, as the clerk's certificate indicates, they were still a part of the deposition, to be made part of the record, or sent up under the second alternative of Supreme Court Rule 47.

As to these X-ray pictures they are properly here on certiorari because of diminution of the record, and for that reason the motion to strike is overruled.

This court may exercise a discretion as to what objects are of such character as to make it impractical to incorporate same in the record, having regard to the proper examination of same in reviewing the cause. The third X-ray picture comes within this discretion.

We note that after the brief on motion to strike was filed, the order of the trial judge to the effect that it was impractical to incorporate these matters in the record was filed here, and no further brief on the subject was filed. In this state of the record, the writer of the original opinion maybe unadvisedly deemed it unnecessary to deal with the motion to strike.

The map showing the locus in quo, merely, sheds no light on the extent of plaintiff's injuries, and, if stricken, would not prevent a review of that question. Cannon v. Scar-

584

borough, 223 Ala. 674, 137 So. 900, par. 2 of opinion.

The application for rehearing is denied.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.