272 So.2d 251

James Gregory WATTS, who sues by his father and next friend, James D. Watts

v.

Jack PETTWAY, and J. J. Bell, Jr., d/b/a Camden Gin Company.

Civ. 22.

Court of Civil Appeals of Alabama.

Dec. 20, 1972.

Rehearing Denied Jan. 17, 1973.

Hubbard H. Harvey, Demopolis, and Robert P. Upchurch, Livingston, for appellant.

L. Y. Sadler, Jr., Camden, for appellees.

HOLMES, Judge.

This is an appeal by the plaintiff below from an order by the trial court overruling

plaintiff's motion for a new trial because of inadequacy of the damages assessed.

The suit below sought damages because of the alleged negligence of defendants in driving a truck into an automobile being driven by the plaintiff on a public highway.

The complaint consisted of two counts; one count alleging negligence, and the other count alleging wanton conduct. Both counts went to the jury.

The jury returned a verdict, this verdict being a general verdict in favor of the plaintiff and assessed his damages at $3,700, and judgment was entered pursuant to the verdict.

The verdict and judgment being in favor of the plaintiff, the only question involved in this appeal is the action of the trial court denying plaintiff's motion for a new trial because of the inadequacy of the damages. It is, therefore, only necessary to set forth the tendencies of the evidence that touch upon the nature and extent of plaintiff's damages.

The plaintiff was eighteen years of age at the time of the accident. Immediately after the accident he was taken to the Wilcox Memorial Hospital emergency room where he was attended to by Dr. William R. Anderson, a qualified, licensed physician. Dr. Anderson's diagnosis was that plaintiff had a lacerated left forehead, laceration of the left hand, multiple contusions and abrasions of the head, face and extremities, and contusion and sprain of the left knee (Hydro Arthrosis of the left knee joint). Hydro Arthrosis is defined as a swelling of the knee joint caused by fluid.

Dr. Anderson attended plaintiff on two additional occasions. On both occasions plaintiff's complaints were related to his knee. Dr. Anderson recommended that plaintiff see an orthopedic surgeon.

Dr. William A. Taylor, a qualified orthopedic surgeon, examined plaintiff on February 15, 1971, approximately forty-five days after the accident. Dr. Taylor diagnosed plaintiff's knee condition as a tear of the cartilage, and performed surgery the following day. At this time cartilage was removed.

Dr. Taylor saw plaintiff three times thereafter, each time plaintiff's knee was drained of fluid.

In May of 1972, Dr. Taylor again performed surgery on plaintiff's left knee and another damaged cartilage was removed. A cast was placed on plaintiff's knee, which cast plaintiff wore in excess of one month.

Dr. Taylor's uncontradicted medical testimony was that the injuries to the knee of plaintiff were the direct result of the accident on which suit was brought.

Dr. Taylor further stated that there was a 25% permanent partial disability to the knee and 10% to 15% permanent partial disability to the leg as a whole.

There was also testimony that plaintiff cracked his left leg when he was fourteen years old and that he had, at age fifteen, suffered from Osgoods-Schlatter's disease, which is defined as a disease of the tuberosity of the tibia with the symptoms and signs being pain below the knee cap, tenderness and partial disability, but there was no medical testimony that this disease contributed to his present disability. There was also some testimony that plaintiff had had defective mobility in his left leg due to the disease he had.

As a result of plaintiff's injured knee, he was caused to be hospitalized for a total period of twenty-one days, this period was not consecutive.

Plaintiff testified that he lost wages in the amount of $2,760.24 as a result of the accident in question and, again, this testimony was uncontradicted.

The plaintiff further testified he was still suffering pain from his knee at the time of trial and that fluid collected on his knee.

In addition, Dr. Taylor, the orthopedic surgeon, testified that a person who experienced an injury such as the one in question is more susceptible to degenerative arthritis in the area of the injury than one who has not been so injured.

The record reveals that at the time of the injury plaintiff and two friends who were witnesses in this cause were employed as common laborers by the same employer; that at the time of trial plaintiff and these same two friends had left their former employer and were now employed by a construction firm as iron workers. The duties of all three appeared to be similar, to wit, tying reinforced steel for concrete on floors and walls, on the ground and off the ground, in the construction of a plant.

Plaintiff, in his complaint, claimed damages for pain both past and present, lost wages, and lost earning capacity. There is no claim nor proof as to medical expenses.

In response to this claim the jury apparently awarded $2,760.24 as lost wages and $939.76 as compensation for the other categories claimed.

As we have alluded to earlier, the question of liability of appellee is not at issue on this appeal. The jury, by its action, found at least that appellee negligently caused plaintiff's damages.

The Alabama Court of Appeals stated in Summerlin v. Robinson, 42 Ala.App. 116, 154 So.2d 685, where an appeal was taken based on the inadequacy of the verdict, as follows:

"For the purposes of this appeal the verdict is conclusive that appellee at least negligently caused plaintiff's damages. [Citations omitted]" (42 Ala.App. at 118, 154 So.2d at 686)

There is no doubt that the law of this state provides that motions for new trials may be granted because of excessive or inadequate damages. Tit. 7, § 276, Code of Alabama 1940, as amended.

As our esteemed former Presiding Judge Thagard stated in King v. Sturgis, 45 Ala. App. 553, 555, 233 So.2d 495, 497:

"We are now faced with the problem of determining what constitutes inadequate damages."

In this instance, it might be added to Judge Thagard's remark, "the extremely difficult problem of determining what constitutes inadequate damages."

■ We feel that it is necessary to this opinion to quote extensively from King v. Sturgis, *supra,* which in turn quotes from other leading cases in our state regarding the subject matter at hand. As Judge Thagard said in King v. Sturgis:

"In Walker v. Henderson, 275 Ala. 541, 156 So.2d 633, the court stated the following:

" 'The power of trial courts to set aside verdicts, while inherent in order to prevent irreparable injustice, is a power hesitantly exercised because of the solemnity of a jury verdict regarded in background of that most precious of rights, the right of trial by jury. "The power should be exercised only when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury." Cobb v. Malone, 92 Ala. 630, 9 So. 738.'

" 'The rule is strengthened in the presumption accorded the correctness of a verdict when the presiding judge denies a new trial. Cobb v. Malone, supra.'

" 'These rules are not inflexible, and this inflexibility but illustrates the well remembered admonition of the late and beloved Dean Albert J. Farrah, stated repeatedly in almost every lecture, that "Out of facts the law arises." ' (275 Ala. at page 544, 156 So.2d at page 636)

"The basic law as applied to excessive or inadequate damages was set out by Bouldin, J., in Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447, as follows:

" 'In Montgomery Light & Traction Co. v. King, 187 Ala. 619, 65 So. 998, L.R. A.1915F, 491 Ann.Cas.1916B, 449, a case of personal injury, involving damages not measurable by any legal standard, and the question for review was inadequacy of the damages awarded, this court, after quoting and approving the

opinion in Moseley v. Jamison, 68 Miss. 336, 8 So. 744, 745, declared: "In a case like this a trial court is by the law—which protects and provides for trials by jury—invested with no right to set aside such a verdict upon the ground of excessiveness or inadequacy alone unless the amount allowed by the verdict is so excessive or inadequate as to plainly indicate that the verdict was produced 'by passion or prejudice or improper motive.' " '

" 'The expression, "passion, prejudice or improper motive," has become quite a favored one in our decisions.' (Citations omitted)

*   *   *   *   *   *

" 'These terms are to be taken in an inclusive sense to safeguard the right of trial by jury, by surrounding the verdict with all reasonable presumptions in its favor. Thus bias, meaning "to incline to one side" (Webster's New International Dictionary), or passion, "moved by the feelings or emotions" (Webster's International Dictionary), may include "sympathy" as a moving influence; and there need be no "conscious violation of duty." ' (Citations omitted)

" 'So it may be said "prejudice" includes forming an opinion "without due knowledge or examination." Webster's International Dictionary.'

" 'Nor is it necessary that the court should inquire and declare what wrongful influence, or failure of duty in the consideration of the case, has wrought a gross miscarriage of justice.'

" 'For reasons of public policy, the deliberations of the jury cannot be invaded to find what motive or influence worked the mischief. The record may or may not shed light on the subject.'

" 'The internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data.'

*   *   *   *   *   *

" 'Accordingly, speaking of prejudice, partiality, etc., in Alabama Great Southern R. Co. v. Randle, 215 Ala. 535, 112 So. 112, 113, Mr. Justice Somerville decided: "This rule does not deny that there may be cases, even of injuries not measurable by any legal standard, where the proven injuries are so severe and extensive that a court would be fully justified in setting aside a grossly inadequate verdict; that is, one which fails to give substantial compensation for substantial injuries." '

*   *   *   *   *   *

" 'The basic reason for disturbing the verdict of a jury because of excessive or inadequate damages is precisely the same as for disturbing it because not supported by the evidence, or because opposed to the clear and convincing weight of the evidence. In the one case the inquiry is directed to one feature of the verdict; the damages awarded.'

" 'Speaking of the power and duty of the trial court in dealing with a verdict for inadequate damages, this court recently held: "That the credibility of witnesses is involved, that opinion evidence of value, not conclusive upon the trior of fact, is to be considered, and that there is no yardstick to measure the damages for physical pain and suffering, does not withdraw the case from the supervisory power of the trial court over the verdicts of juries. In all these matters he is in like position with the jury, and clothed with the power and duty to relieve against verdicts, which, allowing all reasonable presumptions in their favor, are still found to be clearly wrong and unjust from any cause, whether by reason of passion and bias, or from mistake, inadvertence, or failure to comprehend and appreciate the issues." Birmingham News Co. v. Lester, 222 Ala. 503, 504, 133 So. 270'

*   *   *   *   *   *

" 'The review of this ruling is governed by Cobb v. Malone & Collins, 92

Ala. 630, 9 So. 738, viz.: The trial court will not be reversed for refusing to disturb the verdict, "unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." ' (225 Ala. at pages 581 and 582, 144 So. at pages 448 and 449)" (45 Ala.App. at 555, 556, 233 So. 2d at 497, 498)

In King v. Sturgis, *supra*, wherein there were severe and extensive injuries, this court reversed the trial court for its refusal to disturb the jury's verdict of $1,000; also in *Walker*, *supra*, there were severe and extensive injuries, the jury's verdict being $2,000.

In both *King* and *Walker*, *supra*, it was determined by the appellate court that the verdict failed to give substantial compensation for substantial injuries; i. e., the proven injuries were so severe and extensive that a court would be fully justified in setting aside the grossly inadequate verdict.

Appellant, in his excellent brief, cites both *King* and *Walker*. However, as noted earlier, "Out of facts the law arises."

Here, the facts, to wit, the severity of the injuries and the category of damages claimed, are distinguishable from *King* and *Walker*, *supra*.

The proven injuries are catalogued in both *King* and *Walker*, and no purpose other than to lengthen this opinion would be served by enumerating them here. We have attempted to set out the injuries and other pertinent evidence in this instance.

■ We are therefore, in this instance, left with the dilemma on the one hand of the strong presumption of correctness as seen above and on the other hand our power to set aside a grossly inadequate verdict when the proven injuries are so severe and extensive.

■ Here, while the trial court's ruling in denying the motion for new trial may not coincide necessarily with what this court would have done had it been in its stead, we cannot say that its action is error to reversal.

■ In September of 1972, Mr. Justice Bloodworth, in Crum v. McGhee, Ala., 266 So.2d 855, a case involving allegedly excessive damages, again enunciated the rule of law which we believe to be determinative in this case:

"When a trial judge (as here) refuses to grant a new trial sought on grounds, inter alia, that the verdict is contrary to the great weight of the evidence, or not sustained by the preponderance of the evidence, [which, in effect is the trial court's ruling in this instance] this court has said no grounds of the motion are more carefully scrutinized. Furthermore, verdicts are presumed correct, and this presumption is strengthened when a new trial is denied by the trial judge. On appeal, our court must review those tendencies of the evidence most favorable to the plaintiff allowing for those inferences which the jury was free to draw. . . . And, this court has long held that we will not reverse unless 'the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.' [Citations omitted]" (266 So.2d at 859)

We are not so clearly convinced and, therefore, cannot hold the trial court erred to reversal.

All assignments of error having been properly argued and considered, we must affirm the trial judge's action.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.