BRADLEY, Judge.
This is an appeal from a verdict and judgment in the Circuit Court of Montgomery County for the plaintiff in the amount of $4,000 arising out of a claim for damages resulting from an automobile accident. Plaintiff asked for a new trial on the ground that the damages were inadequate. The motion was denied, and from this ruling the plaintiff appeals to this court. Inasmuch as the appeal concerns the adequacy of the damages, only those facts relating to that subject will be discussed.
We hold that the verdict of the jury and judgment entered thereon is not so clearly contrary to the preponderance of the evidence as to be obviously wrong and unjust, and affirm.
Plaintiff Stone, a sixty-four year old male, was injured on August 27, 1973 as a result of a collision between his automobile and a tractor trailer truck driven by defendant Robert L. Turner and owned by defendant Echols Trucking, Inc., a corporation. The collision occurred on U.S. 231, just north of Troy, Alabama. Stone was taken by ambulance from the accident scene to Edge Memorial Hospital in Troy, Alabama where he stayed for ten days. Stone had multiple bruises over his body and a small laceration over his left eye. The attending physician testified at trial that Stone had hairline fractures of the T-8 and T-9 vertebrae, though other doctors testified they found no evidence of fractures. Additionally the physician found Stone to be extremely nervous. While in the hospital, Stone received medication for pain and a prior existing heart condition as well as tranquilizers and anti-depressants for severe emotional disturbance. After the stay in the Edge Memorial Hospital, Stone was transferred to the Perry County Hospital where he remained under the care of his personal physician for another eighteen days.
Stone’s personal physician, Dr. DeRamus, testified that he found the lacerations over Stone’s left eye had healed and the x-rays showed no signs of chipped or fractured vertebrae. He treated Stone for pain and had him fitted for a back brace. However, his main concern was for Stone’s severe depression and nervousness. Stone could not talk about the accident without becoming nervous and upset and weeping; an increased dosage of medication was required to calm him down. Dr. DeRamus referred Stone to a psychiatrist, Dr. Morton, who was later replaced by Dr. Silber-man; to an orthopedic surgeon, Dr. Wilson; and to a cardiologist, Dr. McElroy. Additionally, Stone visited his ophthalmologist *900 to correct troubled vision in his right eye, but this visit was not related to the accident.
Stone first saw Dr. Morton in October 1973. He was diagnosed as having psychoneurosis, which the psychiatrist described in deposition as an anxiety state with reactive depression. Symptoms are spontaneous crying, apprehension, depression, tearfulness and tension, all of which Stone exhibited. Dr. Morton said Stone’s mental state was triggered by the accident, a psychologically traumatic event for Stone because of his fear of being trapped and burned alive in an automobile. This fear stemmed from two previous experiences in Stone’s life: his witnessing a man trapped in a burning automobile begging someone to be merciful and shoot him, and the death of Stone’s father shortly after having been trapped and undiscovered for two days inside a wrecked automobile.
Dr. Silberman began treating Stone in 1975, after Dr. Morton’s death. Dr. Silber-man testified that Stone complained of having backache and stomach pain, becoming easily upset and crying, tiring easily, and having nightmares about the automobile accident. He prescribed medication for Stone’s emotional state. As of the time of trial, Dr. Silberman’s evaluation was that Stone was improving but still had nervous problems. Stone’s anxiety and depression could be attributed to advancing age, to physical injury such as Stone had suffered, or to stress due to business problems. The complaints of backache and stomach pain were probably somatic and often accompanied depression; as the depression improved so would the somatic complaints. Dr. Sil-berman concluded that the symptoms of which Stone complained were reoccurring and might never completely disappear. He said Stone’s business judgment could be affected by such a condition.
Dr. Wilson, the orthopedic surgeon, testified that he did not find any evidence of fractures of the T-8 and T-9 vertebrae, but did find degenerative changes in the spine due to osteoarthritis, a condition which results from age. He said there is no permanent aggravation of this condition without injury and he found none, although a person with such a condition who suffered a blow to the spinal area would, in his opinion, exhibit symptoms longer than would a person who was not so afflicted. Dr. Wilson prescribed no medication but did caution against heavy lifting or manual work on Stone’s part. He said the pain suffered by Mr. Stone after the accident could have been caused by the arthritic condition, the accident, or wearing the back brace.
Dr. McElroy, the cardiologist, treated Stone prior to the accident in May 1973 for heart murmur and angina pectoris, a type of thoracic pain. He prescribed medicine for heart pain and an associate prescribed medication for nervousness and depression. After the accident Mr. Stone still had angina pain and was nervous. In August 1974 Dr. McElroy found Stone to have a leaking mitral valve and a slight enlargement of the heart. The medication prescribed for nervousness and depression was trianil and valium. Dr. DeRamus testified that Dr. McElroy had advised Stone prior to the accident to go slowly in undertaking any new business ventures.
Stone’s wife and his personal physician both testified that emotionally Stone was a different man after the accident. Whereas before the accident he had been a self-confident, aggressive, decisive person, after the accident he easily became upset, as evidenced by symptoms such as weeping while watching television programs. He did not sleep well because of nightmares and had difficulty concentrating and making business decisions. Driving an automobile would leave him exhausted. While his psychological state appears to have improved under treatment, Dr. Silberman testified that further treatment is required.
In his brief Stone claimed that he had incurred expenses as a result of the accident in the amount of $3,414.53. This figure included all of the doctor and hospital costs outlined above, ambulance and wrecker service, a motel bill for his wife of $18.72, a telephone bill for alleged necessary calls of $90.46, and a drug bill for medicine of *901 $307.14. An additional $4,500 was claimed for loss of the wrecked automobile. The only evidence of the car’s value was Stone’s testimony that the car originally cost $5,927.09 when purchased new one and one-half years prior to the accident. His opinion was that the car was worth $4,500 before the accident and a total loss after the accident. There was no other evidence relating to the value of Stone’s wrecked car.
We now face that always difficult problem of determining whether or not a damage verdict is inadequate. The supreme court has given us guidelines to assist us in arriving at a solution to this problem. We quote extensively from Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447 (1932):
“In Montgomery Light & Traction Co. v. King, 187 Ala. 619, 65 So. 998, L.R.A. 1915F, 491, Ann.Cas.1916B, 449, a case of personal injury, involving damages not measurable by any legal standard, and the question for review was inadequacy of the damages awarded, this court, after quoting and approving the opinion in Moseley v. Jamison, 68 Miss. 336, 8 So. 744, 745, declared: ‘In a case like this a trial court is by the law — which protects and provides for trials by jury — invested with no right to set aside such a verdict upon the ground of excessiveness or inadequacy alone unless the amount allowed by the verdict is so excessive or inadequate as to plainly indicate that the verdict was produced “by passion or prejudice or improper motive.” ’
“The basic reason for disturbing the verdict of a jury because of excessive or inadequate damages is precisely the same as for disturbing it because not supported by the evidence, or because opposed to the clear and convincing weight of the evidence. In the one case the inquiry is directed to one feature of the verdict; the damages awarded.
“Speaking of the power and duty of the trial court in dealing with a verdict for inadequate damages, this court recently held: ‘That the credibility of witnesses is involved, that opinion evidence of value, not conclusive upon the trier of fact, is to be considered, and that there is no yardstick to measure the damages for physical pain and suffering, does not withdraw the case from the supervisory power of the trial court over the verdicts of juries. In all these matters he is in like position with the jury, and clothed with the power and duty to relieve against verdicts, which, allowing all reasonable presumptions in their favor, are still found to be clearly wrong and unjust from any cause, whether by reason of passion and bias, or from mistake, inadvertence, or failure to comprehend and appreciate the issues.’ Birmingham News Co. v. Lester, 222 Ala. 503, 504, 133 So. 270.
“The review of this ruling is governed by Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738, viz.: The trial court will not be reversed for refusing to disturb the verdict, ‘unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.’ ” 225 Ala. at 581 and 582, 144 So. at 448 and 449.
In the case at bar the principal area of contention with regard to inadequacy of the damages centered on Stone’s expenses for doctors and hospitals and the value of his damaged automobile. The case was tried both below and here on the theory that Stone’s medical expenses were not all related to the accident but were the result largely of preexisting physical and emotional problems. This being the case the trier of fact had the duty of assessing each witness’s testimony regarding the origin and extent of Stone’s injuries proximately caused by the negligence of the defendants and giving such weight thereto as it considered to be due.
As to the value of the vehicle, the only testimony on this subject was from Stone himself. Where the jury hears opinion testimony on value, it is their preroga *902 tive to give to that testimony such weight as their general knowledge and experience dictates. Andrews v. Frierson, 144 Ala. 470, 39 So. 512 (1905). Furthermore, where that opinion testimony comes from one who stands to gain unduly (Stone here), the jury is authorized to give minimum value to such testimony. Alabama Great Southern R. Co. v. Russell, 35 Ala.App. 345, 48 So.2d 239, rev. on other grounds 254 Ala. 701, 48 So.2d 249 (1949).
Keeping in mind these principles of law and giving the required presumptions to the trial court’s refusal to order a new trial because of inadequate damages, this court, acknowledging the possibility that it might have decided differently had it been sitting as a trial court, cannot say that the verdict of the jury and judgment entered thereon is so clearly contrary to the preponderance of the evidence as to be obviously wrong and unjust. We therefore affirm the trial court’s judgment.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.