Plaintiff, Wiley R. Deal (Trustee), trustee in bankruptcy of Covington Grain Company, appeals from the denial of his motion for a new trial and from a verdict and judgment of $15,000 in his favor against defendant Morris E. Rabren, president and director of the bankrupt corporation, from a verdict and judgment in favor of defendants J.E. McDonald and Rodney R. Johnson, directors of the corporation, and from a directed verdict in favor of the other three defendants, stockholders and alleged directors of the corporation.
This appeal is taken only as to Count III of Trustee's complaint which sought damages from the defendants as officers or directors of the Covington Grain Company for their misfeasance or malfeasance in the performance of their corporate duties. It is alleged that the directors relinquished their duties and turned over control of the business to the president, Morris Rabren, and that this amounted to gross negligence. As a result of this gross negligence, it is claimed, the company lost $640,592 through speculative commodity contracts entered into by Rabren.
The Trustee's position, as stated in his reply brief, is as follows:
 ". . . [T]he Appellees earnestly insist that under said Section [§ 10-2-58 (Code 1975)] the Appellees had the right to rely on the report made to the Corporation by its President, Morris Rabren, to the effect that the commodity contracts that the Corporation had with Merrill Lynch were for `the protection of the *Page 216 
business' and the other report that he gave to the Appellees `that the Corporation was having the best year it ever had'.
"We would respectfully call to the Court's attention another provision of the Alabama Business Corporation Act which was part and parcel of the original Act passed in 1959, being Section 10-2-5 of the Code of Alabama of 1975 and being Title 10, Section 21 (97) of the Code of Alabama of 1940 as amended. This Section is as follows:
 "`Neither an unqualified statement of rights or powers nor an unqualified grant of authority in this chapter shall be taken, or construed, to abrogate, repeal, displace, modify or impair the fiduciary obligations of directors or other officers or employees of any corporation or of stockholders having or exercising control thereof, or of any function thereof, whether by reason of ownership of a majority or other controlling interest therein or otherwise, or the jurisdiction of the courts to grant relief by way of injunction or otherwise, in order to forestall, prevent, correct, remedy or allow damages for fraud, oppression, imposition or other inequitable or remedial conduct in conformity with the applicable principles and practices of law.'
"Thus it will be seen from the direct language of the last quoted provision of the Alabama Business Corporation Act that the same does not give the Directors the right to blandly rely upon a report by the President of a Corporation, but such Directors must exercise fiduciary duties as a Director notwithstanding such reports. . . ."
* * * * * *
 ". . . [T]he Appellees, McDonald and Johnson, as prudent businessmen, did not exercise that degree of diligence characterized as ordinary, which an ordinary prudent man would exercise about his own affairs. But to the contrary, they did absolutely nothing to keep themselves informed about the business affairs of the Corporation and what was being done with the corporate assets and property confided to their care and the undisputed evidence shows that through speculation on the part of Morris Rabren, the President of the Corporation and the person to whom the Appellees had committed the management of the affairs of the Corporation . . . a total of $685,000.00 was lost. . . . As a matter of law, the Appellees, McDonald and Johnson, were guilty of `gross negligence' and under the undisputed evidence they are answerable for the losses of the corporation occasioned as a result of such gross negligence."
In answer thereto, the defendants McDonald and David Jefferies state in brief as follows (omitting transcript references):
". . . The crux of the Trustee's theory of recovery in this case is that Morris Rabren, as President of the company, caused it to engage in speculation in the commodities futures market, and that the defendants [McDonald and Johnson], as members of the Board of Directors, should have known that he was doing this and put a stop to it. . . ."
* * * * * *
"The Trustee contends that at some point during the latter part of the year 1974, Morris Rabren started purchasing commodities futures contract[s] on behalf of Covington Grain at a time whenhe did not have offsetting sales which needed to be hedged. Thus, he contends that Morris Rabren started purchasing speculative
commodities contracts rather than legitimate hedges, and that because the price of soybeans thereafter went down, Covington suffered large losses which precipitated its bankruptcy. . . .
"In approximately August of 1974, a meeting of the stockholders and directors of the company was held at the offices of the company's accountants. At this meeting, the company's financial statement for the year ending April 30, 1974, was presented and explained by the company's certified public accountant. Some question was raised about certain commodities contracts reflected in the statement. At that time, *Page 217 
Morris Rabren explained that the purpose of these transactions was merely to protect the company's position, and that they were not speculative contracts. The company accountant and all of the defendants cautioned Morris that he should be careful not to engage in any speculation, and Rabren was in complete agreement with this view. The company's certified public accountant, who had served in that capacity since the company's inception, testified that he had no reason whatsoever to doubt Mr. Rabren's truthfulness, and that Rabren had been a responsible businessman in the community for many years. Further, based upon his examination of the company's affairs, the accountant saw no reason whatsoever to recommend a special audit regarding commodities transactions. The financial statements which were presented at this meeting showed that the company had a profit of $63,000.00,. . . . (Four months later, . . . the company [was] in bankruptcy). These facts are not disputed by the Trustee. . . . The Trustee's contention is that the directors should have thereafter gone into the offices of the company and conductedtheir own independent examination to determine whether Rabren waslying to them as to the nature of the company's commodities transactions. The validity of this contention is totally destroyed by the Trustee's own knowledgeable witnesses, i.e., Mr. Winkler and Mr. Katz, brokers with Merrill, Lynch, Pierce, Fenner and Smith. . . ."
* * * * * *
"Mr. Katz testified that if, after opening a hedging account, Rabren thereafter decided to engage in transactions which were not legitimate hedges but were in fact speculation, this would have been extremely difficult to detect, and would have required total knowledge about everything connected with the business. To detect this, it would have been necessary to know the total amount of beans which Covington had received from farmers, how many were priced and how many were unpriced, how many were held in storage and how many were shipped or sold to others, how many were sold priced and how many were sold unpriced, and other factors. Mr. Katz testified that he had been in the brokerage business for a number of years and is generally familiar with corporate practices relating to commodity transactions, and he does not know of any particular ledger or book that anyone could refer to to determine whether speculation was in fact occurring, and such record keeping is a very complex affair. Even with his experience and knowledge of the field, Mr. Katz does not feel that he himself would be qualified to determine under these circumstances whether a particular transaction was a legitimate hedge, as represented, or whether it was speculative, even if he had the authority to go into the offices of the company and look at any record or book as long as he wanted to. To make this determination, it would be necessary to hire a certified public accountant, and he does not feel that an ordinary businessman could conduct such an analysis."
The trial judge granted a motion for directed verdict as to defendants Joseph E. McDonald, Jr., Robert R. McDonald, and David A. Jefferies, stockholders and alleged directors, on the ground that there was no proof that they were directors of the corporation. The jury returned a verdict for defendants J.E. McDonald and Rodney Johnson, directors, but against defendant Morris Rabren in the sum of $15,000. Trustee's motion for a new trial as to all defendants was denied.
On appeal, Trustee advances the same grounds for reversal as he presented in his motion for a new trial, i.e., the verdict in favor of J.E. McDonald and Rodney Johnson was contrary to the great preponderance of the evidence, the directed verdict in favor of Joseph E. McDonald, Jr., Robert McDonald, and David Jefferies was in error because there was a scintilla of evidence that they were directors, and the verdict against Morris Rabren was wholly inadequate.
 Verdict for J.E. McDonald and Rodney Johnson
This court has stated many times that verdicts are presumed to be correct and *Page 218 
that no ground in a motion for a new trial is more carefully scrutinized and more rigidly limited than that the verdict is contrary to the weight or preponderance of the evidence. S.S.Kresge Co. v. Ruby, 348 So.2d 484 (Ala. 1977).
When there is evidence presented which, if believed, supports the verdict, a motion for a new trial on the ground that the verdict is against the weight or preponderance of the evidence may be properly denied. Edmondson v. Blakey, 341 So.2d 481 (Ala. 1976).
The presumption in favor of the correctness of the verdict is strengthened by the denial of a motion for a new trial. Edmondsonv. Blakey, supra. Moreover, the denial of a motion for a new trial will not be reversed by this court unless, after allowing all reasonable presumptions as to the verdict's correctness, the preponderance of the evidence is so against it that this court is clearly convinced that it is wrong and unjust. Edmondson v.Blakey, supra.
We are not clearly convinced that the preponderance of theevidence is so against the jury verdict in favor of defendants J.E. McDonald and Rodney Johnson that it is wrong and unjust. As directors, they are liable for losses to the corporation resulting from their wilful and intentional departures from duty, fraudulent breaches of trust, gross negligence, or ultra vires acts. Sellers v. Head, 261 Ala. 212, 73 So.2d 747 (1954). They are not liable to the corporation if they act in good faith and without gross negligence supporting an imputation of fraud. Kingv. Livingston Manufacturing Co., 192 Ala. 269, 68 So. 897 (1915).
There is evidence in the record which, if believed, supports a finding that these two defendants acted in good faith in reliance upon reports and statements made to them by Morris Rabren and by an independent certified public accountant. Such good faith reliance by directors is sanctioned by statute. § 10-2-58 (Code 1975). Moreover, we cannot say that evidence of gross negligence supporting an imputation of fraud so outweighs other evidence in support of the verdict that reversal is required to prevent an injustice.
 Directed Verdict for Joseph McDonald, Jr., Robert McDonald and David Jefferies
Trustee claims that there was a scintilla of evidence to support his allegation that Joseph McDonald, Jr., Robert McDonald, and David Jefferies were directors or de facto directors, and that the question of their liability should have been submitted to the jury.
The scintilla rule is the standard by which the trial judge determines the propriety of granting a motion for a directed verdict. Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236
(1975); Rule 50 (e) ARCP. A directed verdict may be granted where there is a complete absence of pleading or proof on an issue material to the claim or where there are no controverted issues of fact upon which reasonable men could differ. Loeb Co. v.Martin, 295 Ala. 262, 327 So.2d 711 (1976); Alabama Power Co. v.Taylor, supra.
We have found no proof in the record that these three defendants were de jure directors of the bankrupt corporation. Directors are to be elected at the first annual meeting of the stockholders and at each annual meeting thereafter. § 10-2-51 (Code 1975). It is uncontroverted that these defendants werenever elected to the board of directors, nor were they designated
directors in the articles of incorporation.
A person is not a de facto director when he is not holding office under color or appearance of right or when he is not generally exercising the functions of his position. 19 C.J.S. Corporations, § 740.
In support of his allegation that these defendants were de facto directors, Trustee cites testimony by Morris Rabren that the company had a policy that stockholders were considered directors, and testimony of others that these defendants were stockholders. Rabren further testified that they were invited to attend and did attend directors' meetings and that they participated *Page 219 
in the discussions held during these meetings. However, Rabren testified that he did not know whether these defendants were directors or not and that he could not recall if they voted at the directors' meetings. On cross-examination he stated that they never assumed the duties of directors.
It does not appear that there is a scintilla of evidence to prove that the defendants held the office of director under color of right or that they exercised the functions of directors. Rabren's statement alone that the company had a policy that stockholders were considered directors does not constitute a scintilla of evidence that these defendants were directors. There are only two ways to become a de jure director: designation in the certificate of incorporation or election by the stockholders. § 10-2-51 (Code 1975). A de facto director holds office under color of right, through designation or election, but fails being a de jure director by some irregularity in his election or by his ineligibility or failure to qualify as required. Thus, in order to prove that a person is a de facto director, there must be some evidence of an election or designation, and the record is devoid of such proof here.
 Verdict Against Morris Rabren
Finally, Trustee argues that the verdict in his favor against Morris Rabren in the amount of $15,000 is "wholly inadequate" and that the trial court erred in overruling his motion for new trial on this ground.
The basic reason for disturbing a jury verdict because of inadequate damages is the same as stated previously regarding verdicts contrary to the preponderance of the evidence. Allen v.Harper, 277 Ala. 691, 174 So.2d 331 (1965); Yarbrough v. Mallory,225 Ala. 579, 144 So. 447 (1932). After allowing all presumptions in favor of its correctness, we are convinced that the evidence against the verdict is so decided as to clearly convince us that it is wrong and unjust.
We have been unable to find any evidence in the record to support the award of $15,000 damages against Rabren. All the evidence clearly points toward an award substantially greater than this amount. Much of the evidence relating to the amount of loss suffered by Covington Grain is undisputed — even by Rabren himself. The jury cannot disregard the testimony of competent witnesses and substitute its own conclusion for undisputed evidence. Farmers Ginner's Cotton Oil Co. v. Reliance Ins. Co.,341 So.2d 147 (Ala. 1976).
For the foregoing reasons, this cause is due to be affirmed as to appellees McDonald, Johnson and Jefferies and reversed and remanded as to appellee Rabren.
AFFIRMED IN PART.
REVERSED IN PART AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.