NATCO, INC., Plaintiff-Appellee-Cross Appellant,

v.

WILLIAMS BROTHERS ENGINEERING COMPANY, et al., Defendants-Third Party Plaintiffs-Appellants-Cross Appellees,

v.

SANTA FE PIPE LINE COMPANY, Third Party Defendant-Appellee.

No. 73-1604.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1974.

Rehearing Denied March 28, 1974.

Roy C. Snodgrass, Jr., Amarillo, Tex., John S. Estill, Jr., Tulsa, Okl., for Williams Bros. Engineering Co. and others.

Robert L. Templeton, R. C. Hamilton, Amarillo, Tex., for Natco.

Albert S. Tabor, James W. McCartney, Houston, Tex., J. L. McMicken, Amarillo, Tex., for Santa Fe.

Before BELL, COLEMAN and RONEY, Circuit Judges.

BELL, Circuit Judge:

This appeal and cross-appeal are from a judgment for plaintiff Natco, Inc. and against Williams Brothers Engineering Company in a suit based on diversity jurisdiction. Only one issue of substance is presented: Was the proof of loss of profits on the Odessa job sufficient to warrant submission of the claim to the jury? The other assignments of error will be stated and affirmed without extended discussion.

The suit presented a claim for an intentional tort. Plaintiff's cause of action, amply supported by proof, was that defendant Williams Brothers Engineering Company willfully and maliciously interfered with plaintiff's performance of a contract with Santa Fe Pipe Line Company.

The suit, as originally instituted, included a count against Santa Fe on a claim arising under the contract and another count against The Williams Companies and its assignee, Williams Brothers Engineering Company (Williams Brothers), for damages arising out of the alleged intentional tort. The claim against Santa Fe was settled and the complaint was amended to eliminate Sante Fe as a defendant.

Santa Fe was engaged in constructing a liquified petroleum gas pipeline system called "The Chapparal System" running from Hobbs, New Mexico to Houston, Texas. Santa Fe contracted with The Williams Companies to furnish engineering services on the job and to supervise the construction of the system. Williams assigned all its interest in the contract to Williams Brothers Engineering Company. Meanwhile, Santa Fe had contracted with plaintiff to construct two portions of the pipeline, one portion known as the "Conroe Job" being approximately 66 miles of pipeline, and the other being known as "Odessa Job" consisting of approximately 36 miles.

The trial was to a jury on special issues with a verdict being returned for plaintiff in the sum of $94,000 for losses sustained on the Odessa job, $100,000 for loss of profits on the Odessa job, $40,000 for damages sustained on the Conroe job, and exemplary damages in the amount of $150,000. The district court required a remittitur of the damages on the Conroe job and reduced the exemplary damages on a proportionate basis to $125,000.

The verdict and judgment was against Williams Brothers Engineering Company but not against The Williams Companies. Judgment was entered for Santa Fe on the claim of Williams Brothers Engineering Company against it as a third party defendant, the jury having found in the negative on the issue whether the arbitrary or unreasonable conduct of the employees of Williams Brothers was with the authorization or acquiescence of Santa Fe.

■ Preliminarily, we find no merit in the contention of Williams Brothers that this finding by the jury as to Santa Fe was not based on sufficient evidence. We also find without merit the cross-appeal of plaintiff based on the contention that the trial court erred in requiring a remittitur as to the damages on the Conroe job and reducing the exemplary damages. There was no basis for the finding of damages on the Conroe job. The district court was well within its discretion in reducing the exemplary damages on a basis proportionate to the actual damages found. Plaintiff also contends on cross-appeal that the trial court erred in failing to pierce the corporate veil of The Williams Companies so as to hold it in judgment along with Williams Brothers Engineering Company. There was no evidentiary basis for piercing the corporate veil.

This leaves for consideration the $94,000 awarded for losses on the Odessa job and the award for lost profits on that job in the amount of $100,000. We find the proof entirely sufficient to sustain the verdict for actual losses on the Odessa job. The evidentiary basis for the loss of profits in the amount of $100,000 is a much closer matter.

■■ We begin with the rule that proof of loss of profits must rise above the level of mere surmise and conjecture and the contemplated profit must be proved to be reasonably certain. Autrey v. Williams and Dunlap, 5 Cir., 1965, 343 F.2d 730, 742. But in Mechanical Wholesale, Inc. v. Universal-Rundle Corporation, 5 Cir., 1970, 432 F.2d 228, we said that the fact that such damages are difficult to measure and by their nature are uncertain in amount does not render such damages unrecoverable. 432 F.2d at 231.

The sole testimony in this case in support of the loss of profits in the amount of $100,000 came from the president of plaintiff. He testified as to other pipeline jobs where he had made a profit and his method of estimating profits, and that he expected profits to be twen-

ty per cent on the Odessa job. Another witness testified as to the range of profits usually made on such contracts in the industry. The president of plaintiff gave as his opinion that $100,000 would have been a reasonable profit on the Odessa job. Defendant contends that this estimate was conjectural in that pipeline construction is a high risk business with frequent losses. The Conroe job is pointed to as proof that losses often occur due to adverse weather conditions among other things.

■ The question is whether the testimony of plaintiff's president and such other evidence of record as would show lost profits was sufficient to take the case to the jury. The rule of Boeing Company v. Shipman, 5 Cir., 1971, 411 F.2d 365, 368, is that a case is for the jury if there is a conflict in substantial evidence.

We conclude that the detailed evidence having to do with the many instances of interference with plaintiff's contract by employees of Williams Brothers and the resulting damages therefrom is evidence sufficient to bolster the testimony of plaintiff's president that a profit would have been made absent the interference. Given this base and the testimony of the additional witness as to the range of profits in the industry, the question was for the jury. The defendant could have offset the proof just as was done on the Conroe job by showing that other conditions would have made it impossible to realize a profit.

This conclusion is not unlike that reached by this court in Texsun Feed Yards, Inc. v. Ralston Purina Company, 5 Cir., 1971, 447 F.2d 660, a Texas diversity case wherein we reinstated a verdict for lost profits which had been set aside by the trial court on the view that the award rested on conjecture. The damage there was to a cattle feed lot business which had made a profit before its problems stemming from a defective feed supplement arose. Here the many acts of interference with the contract were proven to the satisfaction of the jury. In that case, the disruption of plaintiff's feed lot business by the defective supplement was detailed. Here the past range of profits on similar pipeline jobs was shown. There the profits for one previous year were shown as compared to subsequent annual losses. We held then that the evidence of lost profits was sufficient to make a jury question under Boeing v. Shipman, *supra*. We are of the same view here.

■ This leaves the question of the amount awarded for lost profits. It substantially exceeds the twenty per cent which plaintiff's president testified he expected to make on the Odessa job.[1] It exceeds the range stated by the other witness as being the range of profits in the industry. The recovery for lost profits must be reduced to the outer limit of the proof. The district court is directed to require a remittitur to this extent, and to reduce the exemplary damages proportionately, or, at the option of the plaintiff, to grant a new trial on the question of all damages sustained by plaintiff on the Odessa job. 28 U.S.C.A. § 2106; Glazer v. Glazer, 5 Cir., 1967, 374 F.2d 390, 413; Aircraft & Engine Maintenance, Etc. v. I. E. Schilling Co., 5 Cir., 1965, 340 F.2d 286, 289.

In sum, we find no merit in the errors assigned on the appeal or cross-appeal except as to the amount of the recovery for lost profits.

Affirmed in part; reversed in part with direction.

1. His testimony was that he ordinarily "put twenty per cent expected field profit on any job that I bid", A–268, and on the Odessa job he included an expected profit of "nineteen point something [per cent]." A–286. The amount of the Odessa contract was $366,941 but there is an indication that there were additions to the contract. We do not have the amounts, if any, of the additions.