536 F.2d 1032
 Hassie Duran HOWELL, Plaintiff-Appellee-Cross Appellant,
v.
MARMPEGASO COMPANIA NAVIERA, S. A., et al., Defendants-Third
PartyPlaintiffs-Appellants-Cross Appellees,
J. P. Florio & Co., Inc., Third Party Defendant-Appellant,
Cross Appellee,
American Mutual Liability Insurance Company, Intervenor-Appellee.
 No. 74-2639.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 9, 1976.
 
 Stuart A. McClendon, W. Frederick Denkman, Metairie, La., for J. P. Florio, etc., and American Mutual Liability, etc.
 Melvyn J. Perez, Chalmette, La., Charles J. Ferrara, Metairie, La., for plaintiff-appellee-cross appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM*, COLEMAN and GEE, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 In this Ryan triangle proceeding,[1] the jury found that the M/V CAMINA BAY was unseaworthy and awarded plaintiff Howell a verdict of $150,000 unapportioned damages for medical expense, loss of wages, pain and loss of earning capacity. The jury also found the vessel owner not negligent, Howell forty percent contributorily negligent, and the master stevedore, J. P. Florio & Co., Inc., in breach of its warranty of workmanlike service to the vessel owner. A judgment in Howell's favor for $90,000 against the owner, with judgment over in that full amount for the owner against Florio, was entered on this verdict.[2]
 
 
 2
 The vessel owner appealed from this judgment, but his appeal was dismissed for failure to prosecute. Florio also appealed, asserting insufficient evidence to support the verdict and excessiveness of the award. Howell cross-appealed, claiming the evidence does not support the finding that he was negligent and seeking damages under Fed.R.App.P. 38 for a frivolous appeal. The evidence of unseaworthiness and of Howell's negligence is weak, but sufficient. The award is excessive, and the master stevedore had good cause to fear it would be laid finally at his door. It follows that the appeal is not frivolous. We suggest a remittitur, new trial to be conditioned thereon.
 
 
 3
 On his testimony, which the jury could have credited,[3] Howell was injured in the course of lifting heavy, green boards while standing on an unseaworthy platform in a 'tween deck hatch. By his account, he lost his balance while holding a heavy beam over his head preparatory to nailing it into a temporary dividing wall designed to prevent a cargo of grain to be later loaded from shifting at sea. He relates his injury to the vessel's claimed unseaworthiness by testimony that he had to strain when he lost his balance to avoid falling into "holes" in the platform. This caused him to feel something tear loose in his back. He spoke (or called) to his foreman at this point, telling him he was hurt.
 
 
 4
 Proceeding with light tasks until noon, he attempted to leave the job for lunch by a ladder which lacked several rungs. In the course of doing so, he testified, he reinjured his back, feeling a "terrific pain" and almost losing consciousness. Several days of light work followed, and then a like period of treatment by a general practitioner to whom he was referred by his employer. Conservative therapy was prescribed, one physician advising that he believed Howell was pretending injury. Reference to a well-qualified neurosurgeon produced, at first, normal findings. Later, however, after a normal myelogram, a discogram revealed a defective intervertebral disc. An operation to correct the symptoms of this condition was performed.
 
 
 5
 Howell testified generally and conclusorily that he continued to suffer great pain in his back every day, pain which varied from time to time but was seldom absent. His treatment at the time of trial consisted of hot baths and occasional pain pills, and his condition had apparently stabilized. The last physician's report indicated a visit six months before trial in the nature of a checkup, without prescription of any further treatment. When asked about activities which he could no longer perform since his injury, Howell enumerated gardening, playing ball with his children and riding them on his back, and dancing which he testified he could not do "very much of" any more.
 
 
 6
 The testimony and stipulated testimony of various physicians and surgeons who saw or treated Howell generally corroborated his testimony, adding that he suffered from a congenital spinal anomaly an extra lumbar vertebra. With well-nigh one voice, however, these physicians reported the absence in Howell of the serious objective signs of pain or major disability: muscle spasm, serious limitation of motion, etc. A physician to whom he was referred by his attorneys found "some discomfort in his back" and "minimal weakness on toe and heel walking." Others were unable to square Mr. Howell's continuing complaints with generally normal and improving post-operative physical findings, and at least one suggested malingering on his part. Their estimates of his degree of general disability ranged from ten to fifteen percent.
 
 
 7
 On the economic side, Mr. Howell's medical expenses slightly exceeded $3,200. There is no evidence that there will be further medical expense. Howell suffered the incident made the basis of this suit on November 8, 1967. During that year, his seventh as a longshoreman, he worked ten and one-half months at that calling and earned $8,590. Had he worked the entire twelve, his projected earnings would have been just over $9,800. In 1968, a year when he held various jobs including driving a cab, his earnings increased to $10,392. In 1969, during the early part of which he was recuperating from the operation on his back, Howell's earnings fell to $1,368. In 1970, they were $8,021, and in 1971 his first full year as a furniture salesman they rose to $16,965. In 1972, they reached $19,900. These figures demonstrate moderate loss of past wages: less than $9,000 in 1969 and less than $2,000 in 1970. In all other years, he exceeded his annualized 1967 income as a longshoreman, the only basis in the record for estimating his earnings at that work. There is no basis in the record for projecting any future wage loss. Taking together Mr. Howell's medical expense and calculated wage loss, the total evidence of hard damages approximates $14,000.
 
 
 8
 Of Mr. Howell's $150,000 jury award, then, $136,000 must be assigned to the more speculative damage elements of past and future pain and loss of earning capacity. Such an amount is simply not in the universe of rational awards on the evidence in this record. Bonura v. Sea Land Service, Inc., 505 F.2d 665 (5th Cir. 1974). It cannot stand.
 
 
 9
 Despite the excessiveness of the award, however, we do not believe the jury was actuated in its verdict by passion or prejudice,[4] and it is thus appropriate for us to consider ordering a conditional remittitur so as to avoid, if possible, a second trial. Gulf Coast Bldg. & Construction Trades Council v. F. R. Hoar & Son, Inc., 370 F.2d 746 (5th Cir. 1967). This requires us, under the rule of this circuit,[5] to determine the maximum award which the evidence could support and to suggest a remittitur to that level, or to remand to the trial court for it to do so. See Natco, Inc. v. Williams Brothers Engineering Co., 489 F.2d 639 (5th Cir. 1974). We choose to follow the latter course. Our power to fix and suggest remittiturs has been said to be[6] and doubtless is the same as that of the trial court, and it is subject to the same standard. Nevertheless, where such nebulous elements of damage as partial loss of capacity to perform work which Mr. Howell would not likely do if he could (in view of his doubled earnings as a furniture salesman) and past and future pain and suffering are concerned, we think the trial court which, after all, once saw Mr. Howell and the other witnesses and heard their testimony better able to review the record and suggest a proper remittitur than we. The district court is therefore directed, as in Natco, supra, to require a remittitur to the outer limits of the proof or, at the option of the plaintiff, to grant a new trial. If new trial is had, it should be on all issues, those of liability and damages being sufficiently interwoven that a hearing on damages alone would be inappropriate. Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500-01, 51 S.Ct. 513, 75 L.Ed. 1188 (1931).
 
 
 10
 It remains to note the circumstance, mentioned at the outset, that the shipowner's appeal has failed for want of prosecution and been dismissed by the Clerk pursuant to local rule. In the usual case this circumstance would terminate review of plaintiff's judgment against the shipowner. Here, however, this result would be anomalous and inappropriate. Florio, the master stevedore, is the object of a judgment over in the shipowner's favor for the full amount recovered by plaintiff. The Clerk's order dismissing the shipowner remains interlocutory pending our final judgment here, and since the shipowner filed timely notice of appeal there can be no question that we acquired and have jurisdiction of that appeal. Fed.R.App.P. 3(a). The shipowner's liability to plaintiff rests entirely on actions of the master stevedore, who has contended on appeal that these actions did not render the vessel unseaworthy or constitute a breach of its warranty of workmanlike service to the shipowner. Certainly, as one at whose door plaintiff's recovery is finally to come to rest, the stevedore has a legitimate interest in its amount. In all these circumstances, we think correction of one judgment without correcting the other would be inappropriate. We therefore vacate the Clerk's order dismissing the shipowner's appeal and reinstate that appeal. As to plaintiff's judgment against the shipowner, the district court will require a remittitur calculated by it in the manner discussed above, with a like reduction in shipowner's judgment over against Florio in the event remittitur is elected by plaintiff Howell. If plaintiff declines to make the remittitur so determined, new trial will be granted as to all parties and issues.
 
 
 11
 REVERSED, with directions.
 
 
 
 *
 Judge Wisdom was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 [1]
 Perhaps, but not necessarily, the last we shall be called on to consider. See Chief Judge Brown's observations in Le Blanc v. Two-R Drilling Co., 527 F.2d 1316, 1317 (5th Cir. 1976)
 
 
 [2]
 With reimbursement from Howell for $7,152.78 medical and compensation benefits paid him by the insurer
 
 
 [3]
 Though it was disputed in various aspects by that of other witnesses
 
 
 [4]
 It refused to find the shipowner negligent and found Howell contributorily negligent
 
 
 [5]
 See Bonura, supra, and cases cited therein
 
 
 [6]
 11 Wright & Miller, Federal Practice and Procedure 133-34 (1973)