**ESTATE OF T.K. JACKSON, Jr., (T.K. Jackson, III and Robert H. Jackson, as executors under the Last Will and Testament of T.K. Jackson, Jr., deceased), and J.K. McLean,**

v.

**PHILLIPS PETROLEUM CO.**

**Civ. A. No. 82–1404–AH.**

United States District Court, S.D. Alabama, S.D.

Dec. 10, 1987.

Norton Brooker, Jr., Mobile, Ala., for defendant.

## ORDER

HOWARD, District Judge.

This cause is before the Court on defendant's "Motion for Judgment Notwithstanding the Verdict, or Alternatively, for New Trial or Remittitur." The 28–page motion asserts 72 grounds in support thereof. The motion has prompted four briefs and memoranda comprising over 200 pages, numerous additional documents, and a lengthy hearing.[1]

## I. BACKGROUND

Plaintiffs and defendant own certain oil and gas interests ("working interests") in Washington County, Alabama. The area in which the parties' interests lie has been unitized for hydrocarbon production. Under the relevant contractual agreements between the parties and the other working interest owners, defendant is the "unit operator" and as such has certain responsibilities regarding production of hydrocarbons. As unit operator, defendant may incur certain expenses related to these tasks ("unit expenses") and charge the other working interest owners, including plaintiffs, their pro rata share of these expenses.

In November 1977, a blowout occurred at the Williams AA well located within the unit. Defendant subsequently charged the working interest owners their proportionate shares of defendant's expenses in ending the blowout, in reworking the well, and in litigating and settling a lawsuit with a third party whose property was damaged by the blowout.

Plaintiffs challenged the charges, contending the expenses were not "unit expenses" as defined in the controlling agreements. To recoup these expenses from plaintiffs, defendant subsequently invoked a lien against the proceeds of plaintiffs' sale of hydrocarbons to a third party (Ergon). Defendant instructed Ergon to with-

Frank McRight, Mobile, Ala., for plaintiffs.

---

1. The Court file presently stands several feet high, with the second half of this bifurcated action still to be tried.

hold payments to plaintiffs and to make the payments to defendant. The amounts diverted from plaintiffs exceeded the amounts defendant claimed plaintiffs owed defendant by several times over. Eventually, defendant returned these excess funds to plaintiffs.

Plaintiffs filed this action to recover the sums defendant obtained from Ergon as plaintiffs' share of the blowout and related costs, together with interest thereon. This claim went to the jury as one for breach of contract; no punitive damages were sought.

Plaintiffs also asserted several tort claims. The Court directed verdicts as to some of these at or before the close of the evidence. Three tort claims were submitted to the jury, all arising out of defendant's invocation of the lien. Plaintiffs sought as compensatory damages the interest lost on those diverted funds that were in excess of the amount defendant claimed from plaintiffs, during the period such excess funds were withheld. Plaintiffs also sought punitive damages under each theory.

The jury returned general verdicts for plaintiffs in the amount of $5,100,000 (Jackson) and $2,550,000 (McLean). The parties have agreed that Jackson's maximum compensatory damages were $55,605.96 on the contract claim and $2,700 on the tort claims, and that McLean's maximum compensatory damages were $29,760.15 on the contract claim and $800 on the tort claims.

## II. TORT CLAIMS

Defendant asserts that all of the tort claims should have been dismissed on motion for directed verdict and that, at any rate, no grounds existed for imposing punitive damages under any of those theories.

### A. *Conversion.*

#### 1. *Challenged elements.*

■ Although defendant introduces its conversion argument with the rigid pronouncement that "[n]o conversion cause of action exists for money withheld," (Defendant's Brief at 11), the thrust of defendant's argument is evidently that the funds in dispute here were not sufficiently identified under Alabama law to form the subject matter of a conversion.

The funds at issue in this case were the proceeds of the sale of plaintiffs' share of unit production to a third party (Ergon). These proceeds were held by Ergon, who, at defendant's behest, withheld the funds from plaintiffs and eventually transferred them to defendant as they became due to plaintiffs. The Court concludes that these funds were sufficiently identified under Alabama law to be converted.

Money can form the subject matter of a conversion if sufficiently identified. *E.g., Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith,* 732 F.2d 859, 862 (11th Cir. 1984) (reciting Alabama law). The money need not be specific bills or notes squirrelled away in paper bags, as defendant suggests, to be sufficiently identified. *See, e.g., Lewis v. Fowler,* 479 So.2d 725, 726–27 (Ala.1985).

Defendant relies heavily on the following language from *Lewis:* "When there is no obligation to return the identical money, but only a relationship of debtor or [sic] creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor." *Id.* at 727. Defendant contends that, because plaintiffs had no right to "identical [or specific] money" in exchange for the output delivered to Ergon, only a relationship of creditor and debtor existed between them, and that therefore no cause of action for conversion is available.

Defendant, however, ignores the final prepositional phrase of the quoted sentence. *Lewis* stands only for the proposition that the creditors (plaintiffs) have no cause of action for conversion "against the debtor" (Ergon). *Lewis* does not purport to preclude a conversion claim against a third party who causes the debtor to withhold payment of the debt and to transfer to the third party the funds representing the debt. The other cases defendant discusses are similarly distinguishable.

*Lewis* itself suggests that funds in a "special account" are adequately identified.

*Id.* at 727. As between plaintiffs and defendant, funds held by Ergon, in whatever form, are conceptually equivalent to funds in a special account.

At any rate, and as defendant concedes, (Defendant's Reply Brief at 3–4), the evidence showed that Ergon escrowed the funds upon receiving defendant's instructions to withhold them from plaintiffs, and that defendant again placed the funds in escrow upon receipt of them from Ergon. Thus, from the time Ergon received defendant's notice, the funds at issue were segregated from all other funds in the universe and constituted "specific money capable of identification." *United States Fidelity & Guaranty Co. v. Bass,* 619 F.2d 1057, 1060 (5th Cir.1980). The funds were thus as well identified as the special purpose deposit which the Alabama Supreme Court found sufficiently identified to support a claim for conversion in *Rainsville Bank v. Willingham,* 485 So.2d 319 (Ala.1986).[2]

### 2. *Punitive damages.*

Defendant next argues that, even if the conversion claim was properly submitted to the jury, punitive damages can be awarded only when the defendant acts " 'in known violation of law and of owner's rights, with circumstances of insult, or contumely, or malice.' " (Defendant's Brief at 20 (quoting *Crabtree v. Ford Motor Credit Co.,* 413 So.2d 1161 (Ala.Civ.App.1982))). Defendant contends that it relied on Paragraph 11.5 of the Unit Operating Agreement in instructing Ergon to withhold funds in excess of those defendant claimed to be due it from plaintiffs as their share of the blowout expenses. Since "reliance by [a defendant] on the contract negate[s] a finding that [the defendant's] action was 'in known violation of law or of owner's rights,' " *Crabtree,* 413 So.2d at 1163, defendant concludes that a prerequisite for

imposing punitive damages is absent and that no punitive damages could be assessed in the face of this deficiency. The argument fails for two reasons.

First, defendant assumes that its reliance on Paragraph 11.5 was established beyond peradventure and that the reasonableness of that reliance follows as a matter of law from the Wyoming Supreme Court's decision in *Andrau v. Michigan Wisconsin Pipeline Co.,* 712 P.2d 372 (Wyo.1986).

In pertinent part, Paragraph 11.5 reads as follows:

> In addition, upon default by any Working Interest Owner [plaintiffs] in the payment of its share of Unit Expenses [allegedly, the blowout expenses], Unit Operator [defendant] shall have the right, without prejudice to other rights or remedies, to collect from the purchaser [Ergon] the proceeds from the sale of such Working Interest Owner's share of Unitized Substances until the amount owed by such Working Interest Owner, plus interest, has been paid. Each purchaser shall be entitled to rely upon Unit Operator's written statement concerning the amount of any default.

Defendant insists that *Andrau* demonstrates that defendant was entitled under this language to divert to itself payments in excess of the amounts it claimed plaintiffs owed defendant. Although the contract in *Andrau* contains language similar to that quoted above, the Wyoming Supreme Court did not, and was not asked to, interpret that language. The *Andrau* court reviewed only an adjacent provision, markedly different in its terms, concerning sale of the mineral interest itself as a means of collecting the owner's arrears. No doubt the remedy discussed in *Andrau* was "clear", as defendant insists, but it is

---

**2.** An exhaustive critique of all cases the parties have pressed upon the Court is unnecessary. Briefly, however, the Court explains why two key authorities are inapposite. For defendant: *Woods v. Citronelle—Mobile Gathering System Co.,* 409 F.2d 367 (5th Cir.1968), disallows a conversion action for withheld proceeds from hydrocarbon production only when, as in *Lewis v. Fowler,* the relationship of plaintiff and de-

fendant is that of creditor to debtor and no special fund or account exists. For plaintiffs: *Coffee General Hospital v. Henderson,* 338 So.2d 1022 (Ala.Civ.App.1976), did not "hold" that the proceeds of an insurance policy erroneously paid to the hospital rather than the insured were sufficiently identified, and expressly noted that the issue was not before the court.

simply not the remedy at issue here, nor is it couched in similar terms.

The Court ruled as a matter of law that the quoted language of Paragraph 11.5 allowed defendant to obtain from Ergon funds up to the amount claimed by defendant as owing from plaintiffs. The Court, however, did not render a legal ruling as to whether the quoted language allowed or forbade defendant to divert funds in excess of plaintiffs' alleged debt. Without objection, the Court informed counsel, "I feel that you had an obligation, or at least I'm going to let the jury find that you had an obligation, to tell them how much [plaintiffs owed defendant]." (Transcript, Vol. V, at 193–94.) Thus, the question of contract interpretation was submitted to the jury. (*See also id.*, Vol. VI, at 121–22, 125–26.)

The jury had before it the language of Paragraph 11.5. Through examination of witnesses, plaintiffs' counsel pointed out to the jury, among other things, how the second quoted sentence appears to limit diversion to "the amount of any default," and how defendant continued to divert plaintiffs' proceeds after "the amount owed ... ha[d] been paid."

Despite defendant's protestations that it relied on the language of Paragraph 11.5 and that it did so on the advice of counsel, the jury could reasonably find that, based on its reading of Paragraph 11.5, defendant did not in fact rely on the provision.

■ The second fault with defendant's theory is that it assumes that all of the circumstances listed in *Crabtree* must coincide for punitive damages to be available. The only support defendant can muster for its belief is the absence of the disjunctive "or" between "rights" and "with". Ample Alabama cases exist, however, that either list the factors disjunctively or uphold punitive damages awards without any reliance on a "known violation". *See, e.g., Farmers*

*& Merchants Bank v. Hancock,* 506 So.2d 305, 314–15 (Ala.1987); *Coffee General Hospital v. Henderson,* 338 So.2d 1022, 1024 (Ala.Civ.App.1976).[3]

Thus, even had the evidence been insufficient to allow a finding that defendant converted plaintiffs' funds in known violation of law or of plaintiffs' rights, the jury could have awarded punitive damages by finding that the conversion was accompanied by insult, contumely, or malice, or by wantonness or oppressiveness. Defendant has not contended the evidence was insufficient to support such a finding, and any such argument would be unavailing.

B. *Intentional Interference with Contractual Relations.*

1. *Challenged elements.*

Defendant mounts a multi-pronged attack on plaintiffs' claim that defendant intentionally interfered with plaintiffs' contractual relations with Ergon. According to defendant, the claim should not have been submitted to the jury under the law and the evidence. Because each prong misstates either the law or the evidence before and questions presented to the jury, the attack fails.

First, defendant argues that "[t]here was no evidence that the business relationship between the plaintiffs and Ergon was damaged." (Defendant's Brief at 22.) This dearth of evidence is not surprising, since plaintiffs' cause of action was for intentional interference with contractual, not business, relations. The jury was so charged at least six times. (Transcript, Vol. VI, at 117, 118, 121, 123, 124, 126).

■ Assuming defendant intended "contractual" when it employed "business", defendant has volunteered no support for its position. The Alabama Supreme Court has recently stated that the plaintiff need show only "[d]amage *to the plaintiff* as a result of defendant's interference." *Gross v.*

3. The *Crabtree* court itself first dealt with the question whether the defendant's action was in known violation of the plaintiff's rights, and later dealt separately with the question whether the defendant, although not acting in violation of plaintiff's rights, acted with insult, contumely

or malice. *See* 413 So.2d at 1163. Were the absence of a "known violation" fatal to a claim for punitive damages, the *Crabtree* court would have needed no finding regarding insult, contumely or malice before declaring that "punitive damages were not warranted." *Id.*

*Lowder Realty Better Homes & Gardens,* 494 So.2d 590, 597 (Ala.1986) (en banc) (emphasis added). At any rate, the damage to the plaintiff and to the contractual relation in this case is the same: loss of the other party's performance. By inducing Ergon not to perform, defendant deprived plaintiff of funds and of the use of those funds, and defendant thereby damaged both plaintiffs and their contractual relation with Ergon.

■ Second, defendant argues that an action for intentional interference with contractual relations may be maintained only when the defendant exercises "direct fraud, force or coercion". (Defendant's Brief at 23 (citing *Erswell v. Ford,* 208 Ala. 101, 103, 94 So. 67, 69 (1922))). The Alabama Supreme Court, however, rejected this cramped version of the tort in *Gross.* *See* 494 So.2d at 596-97.[4] Defendant also waived any objection to the Court's failure to expressly charge the jury regarding fraud, force and coercion. (*See* Transcript, Vol. VI, at 133-34; *id.,* Vol. V, at 223.)[5]

■ Third, defendant argues that it was merely "protect[ing] ... its own contractual rights according to the terms of [Paragraph 11.5]," (Defendant's Brief at 22), and that assertion of such a legally protected interest cannot rise to the level of a tortious interference with plaintiffs' contractual relations. As discussed in Part II.A.2., the jury was entitled to find that defendant had no such right, with respect to sums beyond the amount allegedly owed by plaintiffs, and that defendant did not rely on such a right.

■ Fourth, defendant asserts that plaintiffs' claims are based on nothing more than defendant's inaction. (Defendant's Brief at 24, 25). At least prior to *Gross,* Alabama law did require an affirmative interference. *See* Comment, *Interference with Contractual and Business Relations in Alabama,* 34 Ala.L.Rev. 599, 609, 623-24 (1983). Assuming that this requirement lingers, defendant's behavior in instructing Ergon to withhold payments to plaintiffs and to make them instead to defendant cannot conceivably be construed as "inaction".

Fifth, defendant reminds the Court that Alabama recognizes no cause of action for *negligent* interference with contractual relations. (Defendant's Brief at 27-28). Quite so, but there was ample evidence from which the jury could conclude that defendant's interference was intentional.

### 2. *Punitive damages.*

■ Defendant next contends that no punitive damages could be awarded under this claim even if the claim was properly submitted to the jury. First, defendant laconically resurrects the "fraud, force or coercion" argument laid to rest in Part II.B.1. Second, defendant alleges that punitive damages presuppose wanton, spiteful, or malicious conduct, and that the Court failed to instruct the jury regarding these terms. Defendant's statement of the law is correct, *Gross,* 494 So.2d at 597 n. 4; its statement with respect to the charge is not. (Transcript, Vol. VI, at 126-27.) There was ample evidence from which the jury could attach these adjectives to defendant's behavior.

### C. *Wrongful Exercise of Lien Rights.*

Defendant argues that its invocation of its lien rights in amounts greater than those it claimed plaintiffs owed was neither "wrongful" so as to support a cause of action for wrongful exercise nor "malicious" so as to support punitive damages.

### 1. *Challenged elements.*

■ Defendant equates "wrongful" in this context with "erroneous". (Defendant's Brief at 30, 32.) The exercise was not erroneous, defendant asserts, because Paragraph 11.5 allowed exercise of the lien

---

**4.** Defendant has not bothered to respond to plaintiff's argument that *Gross* applies retroactively. *See, e.g., Birmingham Television Corp. v. DeRamus,* 502 So.2d 761 (Ala.Civ.App.1986).

**5.** Defendant's motion and briefs are riddled with objections that have been waived, and the Court has refrained from cataloguing these waivers only to reduce the length of this opinion.

rights up to the full extent of plaintiffs' share of production proceeds, regardless of the amount owed. As discussed in Part II.A.2., the construction of this provision was left to the jury.[6] There was ample evidence from which the jury could find that Paragraph 11.5 allowed defendant to divert only the amount allegedly due it and/or required defendant to specify to Ergon the amount owed.

### 2. *Punitive damages.*

 Defendant defines "malice" as "a purpose other than to collect the [arrears]." (Defendant's Brief at 33 (quoting *Alabama Power Co. v. Emigh*, 429 So.2d 952, 955 (Ala.1983))). Defendant insists that, at most, the evidence discloses "bureaucratic bungling …, … ineptitude or negligence" such as the *Emigh* court ruled did not rise to the level of malice, and thus could not support an award of punitive damages.

It is true that bungling, ineptitude or negligence does not equal malice, and the facts in *Emigh* demonstrated only the former. "However, malice is *usually* an inferential fact, … and, as such, whether it is present is a jury question." *Brown v. Moore*, 487 So.2d 882, 884 (Ala.1986) (emphasis in original). There was evidence here, as in *Brown*, that plaintiffs repeatedly contacted a responsible official of defendant, informed him of the debt's satisfaction, and requested that the exercise of lien rights be terminated; that the official promised prompt remedial action, but that such action was greatly delayed. Also, there was other evidence on this point, including evidence of defendant's indignation over having its assessment of charges from the blowout challenged by plaintiffs.

Mere bureaucratic bungling, ineptitude or negligence was one reasonable interpretation of the evidence; malice was another. Here, as in *Brown*, the choice was properly left to the jury.

### D. *Jury Charges.*

Most of defendant's objections to the Court's jury charge and to the Court's fail-

ure to give defendant's requested charges reiterate grounds already rejected in Parts II.A.-C. Many also were waived by defendant's failure to "stat[e] distinctly the matter objected to and the grounds of the objection" before the jury retired. Fed.R. Civ.P. 51. The remainder of defendant's objections, including that to the Court's allowing the jury a copy of the charge, are patently groundless, and the Court will not additionally tax the reader's stamina by addressing each separately. In sum, defendant has asserted no error mandating a new trial.

### E. *Closing Argument.*

 Defendant argues that plaintiffs' counsel played on the bias, passion or sympathy of the jurors in rhetorically musing over how many times defendant may have "done this to disabled veterans and widows". Such argument, defendant continues, constituted a request that the jury disregard the Court's instructions, and therefore requires a new trial. (Defendant's Brief at 43-45).

Two isolated references in the course of a lengthy closing argument, uttered without emotion and considered in light of counsel's express admonition to follow the Court's charge, hardly compares with the egregious, continual remarks of counsel in *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir.1975), the only case on which defendant relies. Counsel's argument was not "so conducive to prejudicing the jury's verdict that it substantially affected the total fairness of the trial." *Id.* at 284. No new trial is mandated on this ground.

### F. *Constitutional Grounds.*

Based on the character of the arguments advanced by defendant in support of its constitutional objections to the verdict, as well as defendant's failure to respond to plaintiffs' rather more thorough treatment of such issues, the Court concludes that

---

**6.** This procedure in effect gave defendant a second bite at the apple, because the Court made clear before charging the jury that it was pre-

pared to construe the provision against defendant as a matter of law. (*See* Transcript, Vol. V, at 193.)

defendant has either abandoned these grounds for a new trial or is not seriously pursuing them.[7]

### G. Miscellaneous Grounds.

Defendant did not brief the 32nd and 33rd grounds of its motion, which assert reversible error in counsel's use of leading questions on direct examination and in the allegedly nonresponsive answers given by one of plaintiffs' witnesses on cross-examination. No reversible error is presented on these grounds.

The Court also rejects defendant's 34th ground, that "[t]he jury verdict is contrary to the great weight of the evidence and is a miscarriage of justice."

### III. PASSION OR PREJUDICE

Anticipating the possible failure of its efforts to secure an unconditional new trial on the basis of prejudicial trial error, defendant additionally asserts that the jury's verdict was tainted by bias, passion, prejudice, corruption, or other improper motive ("passion or prejudice"). Defendant first contends that this passion or prejudice requires an unconditional new trial on all issues because it infected the liability determinations themselves. Even if the passion or prejudice tainted only the damages awards, defendant continues, an unconditional new trial on damages is necessary due to the cumulative effect of Alabama procedural and federal substantive law. Finally, failing an unconditional new trial, defendant urges the Court to order a new trial conditioned upon plaintiffs' refusal to accept a remittitur.

### A. Passion or Prejudice as Infecting the Liability Determinations.

The parties agree that federal procedural law governs the decision whether an unconditional new trial on liability is necessary once the state law threshold for adjusting the verdict is met. E.g., Lowe v. General Motors Corp., 624 F.2d 1373, 1383 (5th Cir.1980). They also agree that, "if it appears that the improper jury action, in reasonable probability, affected both the liability and damages issues, then a new trial as to both issues must be ordered." Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 282–83 (5th Cir.1975).

Defendant's argument that passion or prejudice infected the jury's liability determinations is contained in a single, conclusory sentence: "Since it is clear that the amount of the award for punitive damages resulted from bias, prejudice and/or passion, it follows almost as a matter of necessity that the jury's determination that [defendant] was liable for punitive damages was tainted with the same bias, prejudice and/or passion." (Defendant's Reply Brief at 11.)

■ As detailed in Part III.C., the Court concurs with defendant's theory that passion or prejudice tainted the jury's award of damages. Despite the apparently unprecedented disparity between the punitive and relevant compensatory damages, however, the Court is unable to make the mental leap that defendant asserts "follows almost as a matter of necessity."

Edwards itself indicates that a simple finding that passion or prejudice tainted the damages award is an inadequate basis for finding that the taint permeates the liability assessment as well. In Edwards the Fifth Circuit determined that passion or prejudice infected the liability determination by "[t]ak[ing] together" all of the following: (1) "the issue of liability was strongly disputed"; (2) "the trial court itself determined the award of damages to have been grossly excessive"; (3) "counsel's final argument to the jury was clearly prejudicial"; (4) "the trial judge himself found that the jury's verdict was swayed

---

7. Defendant also failed to respond in its reply brief to plaintiffs' arguments concerning the Court's jury instructions and the propriety of submitting plaintiffs' tort theories to the jury. Defendant prefaced its reply brief by acknowledging these omissions and by remarking that its "deferral of argument in that regard should not be construed as any acquiescence to the propriety of the Plaintiffs' claims in those regards." (Defendant's Reply Brief at 1.) Defendant's failure similarly to reaffirm the validity of its constitutional claims underscores the apparent lack of conviction with which they are presented.

by passion and prejudice"; and (5) "the trial judge himself found ... that the jury failed to respond to the court's instructions." 512 F.2d at 283.

Defendant would have this Court reach the same result as that in *Edwards* even though only the second and fourth factors present in *Edwards* exist in this case. True, "the issue of liability was strongly disputed" by defendant, but there was more than ample evidence on which the jury could have pegged defendant's liability for compensatory and punitive damages under plaintiffs' tort theories of recovery. Vociferous disagreement with that evidence, at least absent something akin to prejudicial jury argument or a failure to follow the Court's charge, simply does not render suspect a liability determination clearly supported by the evidence.

Besides *Edwards*, defendant has not cited, much less discussed, any binding case actually ordering a new trial on all issues due to passion or prejudice. Whether viewing the present case in isolation or comparing it with *Edwards*, the Court finds no "reasonable probability" that passion or prejudice infected the jury's liability determinations.

B. *Passion or Prejudice as Precluding a Conditional New Trial Order.*

Defendant insists that the Court has no option to grant a conditional new trial contingent on plaintiffs' rejection of a remittitur. Rather, defendant asserts the Court has only three options: grant an unconditional new trial on damages, grant an unconditional new trial on all issues, or let the jury's verdict stand. Defendant's argument springs from the same source as many apparent anomalies in the law—the interplay between state substantive rules and federal procedural rules that is mandated in diversity cases under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.

Defendant's argument runs as follows: (1) state substantive law establishes the threshold showing of excessiveness that must be made before the grant of a conditional new trial is authorized in a di-

versity case; (2) federal procedural law determines whether, given the threshold showing of excessiveness under state law, a conditional new trial is permissible or an unconditional new trial is required; (3) under Alabama law, no conditional new trial is authorized unless the verdict is so excessive as to show bias, passion, prejudice, corruption, or other improper motive ("passion or prejudice"); (4) under Eleventh Circuit law, a showing of passion or prejudice necessitates an unconditional new trial, either on damages alone or on all issues; (5) therefore, if the threshold showing for a conditional new trial is met, passion or prejudice is present and the Court must order an unconditional new trial; if passion or prejudice is not present, no conditional new trial is authorized under binding state law.

The Court, as well as plaintiffs, agrees with the first three of defendant's four premises. First, state substantive law determines whether the verdict was "excessive" in the sense of being vulnerable to a conditional or unconditional new trial order. *E.g., Lowe v. General Motors Corp.*, 624 F.2d 1373, 1383 (5th Cir.1980). Second, federal procedural law determines whether, given the showing under state law, an unconditional new trial is required. *E.g., id.* Third, under Alabama law, "[o]nly when it is shown that a verdict is based on bias, passion, prejudice, corruption, or other improper motive does a court have authority to order a remittitur." *B & M Homes, Inc. v. Hogan*, 376 So.2d 667, 676 (Ala.1979); *accord Shiloh Construction Co. v. Mercury Construction Corp.*, 392 So.2d 809, 814 (Ala.1980).

The parties agree that an unconditional new trial on all issues is not necessary unless the passion or prejudice infected the liability determinations themselves. *E.g., Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir.1975). As explained in Part III.A., the Court concludes that no passion or prejudice infected the liability determinations.

The dispute, then, narrows to the question whether the Eleventh Circuit requires an unconditional new trial on dam-

ages if it is shown that passion or prejudice infected the award. Defendant asserts the affirmative, citing both binding precedent and new Fifth Circuit authority. Plaintiffs counter with their own set of precedent, and the Court's independent research has disclosed numerous additional cases not addressed by any party. The Court concludes that, under current binding precedent, a conditional new trial is permissible in the presence of passion or prejudice infecting only the damages award.

The seminal cases supporting the Court's conclusion are *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir.1975) and *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir.1970), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). In *Edwards* the trial court denied defendants' motion for new trial, but reduced the verdict by half because "the jury was swayed by passion or prejudice and failed to respond to [certain jury] instructions." 512 F.2d at 281 n. 6. Defendants argued on appeal that the finding of passion or prejudice precluded cure by remittitur and necessitated a new trial. *Id.* at 281.

The Fifth Circuit agreed that a new trial on all issues was required. The court did so, however, because it found the passion or prejudice to have pervaded the liability finding. *See id.* at 283. Had the passion or prejudice tainted only the damages award, the court implied in dictum, it could have affirmed the order of remittitur: "If the passion, prejudice, caprice, undue sympathy, arbitrariness or more taints only the damage award and not the liability assessment, *the proper response is a remittitur or a new trial addressed to damages alone.*" *Id.* at 282 (emphasis added). The court in *Westerman v. Sears, Roebuck & Co.*, 577 F.2d 873 (5th Cir.1978), followed *Edwards* and allowed an order of remittitur to stand even though it was based in part on the trial court's finding that the damages award was "the result of improper motives." *See id.* at 882–83.

*Gorsalitz*, relied upon in *Edwards* but in few other cases, bluntly allows remittitur as a cure for verdicts induced by passion or prejudice: "[W]e think that the trial judge ... could properly find that some part of this large verdict resulted from undue sympathy on the part of the jury. We hold, therefore, that the district court did not err in conditionally requiring some remittitur...." 429 F.2d at 1046 (emphasis omitted).

A single binding case arguably supports defendant's proposition. In *Howell v. Marmpegaso Compania Naviera, S.A.*, 536 F.2d 1032 (5th Cir.1976), a general maritime action, the court ruled an award of compensatory damages to be excessive, then continued: "Despite the excessiveness of the award, however, we do not believe the jury was actuated in its verdict by passion or prejudice, and it is thus appropriate for us to consider ordering a conditional remittitur...." *Id.* at 1034 (footnote omitted). However, *Howell* has been construed to mean only that remittitur is available so long as "there is no showing that the jury's *determination of liability* was the product of undue passion or prejudice." *Hendrix v. Raybestos—Manhattan, Inc.*, 776 F.2d 1492, 1507 (11th Cir.1985) (emphasis added).

Several cases that at first blush fall into one camp or the other should be disregarded because the court was not directly faced with the issue. In *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir.1984), the court ordered a remittitur after quoting *Edwards*, but expressly stated the jury award was "grossly excessive", without addressing defendant's claim that the award was "the product of the jury's passion or prejudice." *See id.* at 1548–50. In *Gleason v. Hall*, 555 F.2d 514 (5th Cir.), *vacated*, 557 F.2d 1052 (5th Cir.1977), the court affirmed an order of remittitur because the damages reflected an *improper attempt to punish the defendant, see id.* at 518–19, a motive seemingly equivalent to passion or prejudice. As the statement of issues reflects, however, the compatibility of passion or prejudice with remittitur was not before the court. *See id.* at 516. Finally, in *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985), the court conceded that passion or preju-

dice could necessitate an unconditional new trial. *See id.* at 1447. The court so remarked, however, only in response to defendant's assertion that passion or prejudice infected liability as well as damages. *See id.* The court then concluded merely that no passion or prejudice tainted either damages or liability, and upheld an order of remittitur based on excessiveness of damages. *See id.* at 1447–48.

To bolster its dearth of authority, defendant points the Court to the new Fifth Circuit's opinion in *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233 (5th Cir.1985). The court there dismissed *Edwards* and *Gorsalitz* as "deviat[ing]" from what the court described as the "better approach" of requiring a new trial if the damages were awarded on the basis of passion or prejudice. *See id.* at 1241. While the *Westbrook* court cited *Howell* and one new Fifth Circuit case as requiring a new trial under these circumstances, the court gave no suggestion why these cases represent the "better approach". *Westbrook* is not binding on this Court, and its cursory exploration of the issue carries little persuasive content.

Far more telling are those cases in which the circuit court, sitting in diversity, considered the possibility of remittitur when Alabama substantive law appertained. In *Dempsey v. Auto Owners Insurance Co.,* 717 F.2d 556 (11th Cir.1983), the court ruled the damages award to be "based in part on bias, passion, or other improper causes" and ordered a remittitur as a condition to the denial of a new trial. *See id.* at 562. In *Warren v. Ford Motor Credit Co.,* 693 F.2d 1373 (11th Cir.1982), the court acknowledged that Alabama law controlled the substantive question of excessiveness and that the applicable law forbade remittitur absent passion or prejudice. *See id.* at 1379 & n. 3. The court, thus fully aware it could not upset the verdict without a showing of passion or prejudice, ordered a remittitur. *See id.* at 1380.

Finally, in *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980), the court reversed the district court's grant of a new trial on all issues following jury verdicts for the plaintiffs. The trial judge gave two independent reasons for granting the new trial, the second of which was that the verdicts were "excessive and demonstrate[d] prejudice, bias and passion." *Id.* at 1382. The Fifth Circuit ruled that the trial judge did not mean that a complete new trial on all issues was necessary on this ground, but only that a conditional new trial on damages would have been appropriate had the trial judge ordered, and the plaintiffs refused, a remittitur. *See id.* at 1383. The appellate court did not set aside —and therefore left intact—the trial judge's finding of passion or prejudice, yet remanded to the district court "with instructions to fix remittiturs appropriate under the governing law." *See id.* at 1383. The district court on remand reaffirmed its finding of passion or prejudice and established a remittitur amount. *See Lowe v. General Motors Corp.,* 527 F.Supp. 54 (N.D.Ala.1981).

The preceding analysis leads the Court to conclude that the Eleventh Circuit presently permits a conditional new trial order if passion or prejudice infected the damages award but not the liability assessment. The Court therefore rejects the fourth premise of defendant's argument as well as defendant's conclusion.

### C. *Passion or Prejudice as Infecting the Damages Awards.*

As noted in Part III.B., Alabama law establishes the threshold showing of excessiveness necessary to warrant an order of remittitur in this diversity case. *E.g., Lowe v. General Motors Corp.,* 624 F.2d 1373, 1383 (5th Cir.1980). The required showing is one of a verdict "based on bias, passion, prejudice, corruption, or other improper motive." *B & M Homes, Inc. v. Hogan,* 376 So.2d 667, 676 (Ala.1979); *accord Shiloh Construction Co. v. Mercury Construction Corp.,* 392 So.2d 809, 814 (Ala.1980). A court cannot order a remittitur simply because it disagrees with the size of the verdict and would itself have awarded a smaller amount. *Hammond v. City of Gadsden,* 493 So.2d 1374, 1379 (Ala.1986).

The Court has reviewed the jury's verdict in light of the factors elucidated by the Alabama Supreme Court. *See id.* ("The culpability of the defendant's conduct, ... the desirability of discouraging others from similar conduct, the impact upon the parties, [and] the impact on innocent third parties."); *Aetna Life Insurance Co. v. Lavoie,* 505 So.2d 1050, 1053 (Ala.1987) ("the gravity of the wrong, the nature and extent of the injury inflicted upon the [plaintiffs], and ... a comparative analysis of other awards allowed in similar cases"). On the basis of this review, the Court concludes that the damages awards by the jury are so excessive as to demonstrate that the awards were based on bias, passion, prejudice, corruption, or other improper motive.

In arriving at this conclusion, the Court is influenced by the tremendous disparity between the punitive damages awards and the relevant compensatory damages awards, especially as compared with the ratios present in the remittitur cases relied upon by the parties. Although the Court would reach the same conclusion regarding the existence of passion or prejudice even without exploring these numerical relationships, the parties have extensively briefed and argued the relevancy and import of these figures, and the Court deems it appropriate to make the following remarks.

(1) By letters of October 2 and October 8, 1987, the parties have stipulated that plaintiffs' maximum "recoverable compensatory damages" are as follows:

| | Jackson | McLean |
|---|---|---|
| Blowout expenses: | $ 55,605.96 | $ 29,760.15 |
| Interest on Excess Sums Diverted: | + 2,700.00 | + 800.00 |
| Total: | $ 58,305.96 | $ 30,560.15 |

The minimum amount of punitive damages awarded by the jury are thus calculable as follows:

| | Jackson | McLean |
|---|---|---|
| Verdict: | $5,100,000.00 | $2,550,000.00 |
| Compensatory Damages: | − 58,305.96 | − 30,560.15 |
| Punitive Damages: | $5,041,694.04 | $2,519,439.85 |

Punitive damages were not sought or available with respect to the blowout expenses defendant charged plaintiffs, and the jury was so instructed. Thus, the relationship between the punitive damages awards and the compensatory damages awards on those claims susceptible to punitive damages were as follows:

| | Jackson | McLean |
|---|---|---|
| Punitive Damages: | $5,041,694.04 | $2,519,439.85 |
| Compensatory Damages: | $ 2,700.00 | $ 800.00 |
| Ratio of Punitive/Compensatory Damages: | 1,867.3/1 | 3,149.3/1 |

(2) The Court obviously must consider the size of the verdict in determining whether the verdict warrants corrective action. Alabama's passion or prejudice requirement for ordering a conditional or unconditional new trial is not expressed in a vacuum; rather, the verdict must be "so great, unjust and grossly excessive as to indicate bias and undue prejudice by the jury." *Coffee General Hospital v. Henderson,* 338 So.2d 1022, 1024 (Ala.Civ. App.1976). " 'The internal evidence, the verdict itself, viewed in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data.' " *Watts v. Pettway,* 49 Ala.App. 324, 328, 272 So.2d 251, 254 (Civ.App.1972) (quoting *Yarbrough v. Mallory,* 225 Ala. 579, 581, 144 So. 447, 449 (1932)).

(3) The Court may legitimately compare the amount of punitive damages with the amount of compensatory damages to which they are appended in determining whether the verdict is so excessive as to evince passion or prejudice in their assessment. *See Aetna Life Insurance Co. v. Lavoie,* 505 So.2d 1050, 1053 (Ala.1987) (court to consider "the ... extent of the injury inflicted upon the [plaintiffs]"). Plaintiffs correctly state that "punitive damages need bear no particular 'mathematical' relationship to actual damages." (Plaintiffs' Memorandum at 80.) Such a general proposition, however, hardly requires the conclusion that no ratio of punitive to compensatory damages can ever suggest the existence of passion or prejudice. Of the six cases cited by plaintiffs in support of their proposition, three both assert the proposition and include sufficient figures to calculate a ratio. In those three cases, punitive damages outweighed compensatory dam-

ages by approximately 6 to 1, 23 to 1, and 8 to 1, respectively. *See Carroll Kenworth Truck Sales, Inc. v. Leach*, 396 So.2d 1044 (Ala.1981); *U–Haul Co. v. Long*, 382 So.2d 545 (Ala.1980); *Neil Huffman Volkswagen Corp. v. Ridolphi*, 378 So.2d 700 (Ala. 1979). This case, in contrast, concerns ratios of approximately 1,867.3 to 1 and 3,149.3 to 1.

Plaintiffs also correctly state that punitive damages may be awarded on the basis of only nominal compensatory damages. (Plaintiffs' Memorandum at 81.) Again, the cited cases do not suggest that no ratio of punitive to compensatory damages could indicate jury passion or prejudice. Indeed, the Alabama Supreme Court in *Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So.2d 916 (Ala.1981), after noting the rule relied on by plaintiffs, ordered a remittitur that lowered the ratio of punitive to compensatory damages from approximately 182.3 to 1 to approximately 15.7 to 1. In ordering the remittitur, the court noted nothing other than the amount of the verdict in concluding the verdict was "obviously" the result of passion and prejudice. *See id.* at 926.

(4) Plaintiffs complain that, even if comparisons of punitive to compensatory damages awards are relevant, the ratios noted above are not the appropriate ones: "Since [defendant's] calculations do not take all of plaintiffs' actual damages into account, [defendant] dramatically overstates the actual ratio of punitive to compensatory damages." (Plaintiffs' Memorandum at 82.) Without support, plaintiffs insist the jury could consider, in awarding punitive damages, defendant's gain from its assessment of costs from the blowout—*i.e.*, from defendant's breach of contract. (Plaintiffs' Reply Memorandum at 11.)

The only "actual damages" that are relevant, however, are those arising from the claims which could support an award of punitive damages: that is, the lost interest arising from plaintiffs' claims for wrongful exercise of lien rights, conversion, and intentional interference with contractual relations. Plaintiffs have conceded those damages to be as set forth above. Plaintiffs, in effect, are arguing that the jury awarded punitive damages on the basis of the

breach of contract claim. The Court rejects this wholly unsupported construction of the jury's verdict. Even if plaintiffs' assertion were true, the jury would have disregarded the clear instructions of the Court that punitive damages could not be awarded under that count. Such a disregard of the Court's instructions, in violation of the jury's sworn duty to follow them, would require the verdict to be set aside regardless of the ratio of punitive to compensatory damages or any other consideration.

■■■ (5) At oral argument of defendant's post-trial motions, plaintiffs argue that, if any ratio were relevant, it would be that of punitive damages to the full amount of excess funds diverted (approximately $150,000), not to the interest on that amount during the time plaintiffs were deprived of its use (approximately $3,500).

The sole case on which plaintiffs rely does not expressly or implicitly embrace this proposition. *Coffee General Hospital v. Henderson*, 338 So.2d 1022 (Ala.Civ.App. 1976), merely states that return of the converted property prior to trial reduces the plaintiff's damages but does not preclude recovery of compensatory or punitive damages for the tort. Indeed, it is doubtful that plaintiffs would assert this proposition at all had defendant held up plaintiffs' funds so long before returning them that the lost interest exceeded the principal amount diverted and returned.

The Court does not question that the amount diverted figures into the factor analyses postulated by the Alabama courts. *See Aetna Life Insurance Co. v. Lavoie*, 505 So.2d 1050, 1053 (Ala.1987) (considering "the gravity of the wrong"). The Court, therefore, has taken into account the amount diverted in determining whether passion or prejudice infected the damages awards. The Court rejects only plaintiffs' position that, in examining the separate consideration of ratios, something other than actual compensatory damages suffered and the punitive damages awarded is significant.

(6) Not only may this Court compare the ratio of punitive to relevant compensatory damages represented by the verdict at is-

sue here, but it may also properly compare both the absolute size of the verdict and the ratio of punitive to compensatory damages to verdicts and ratios disclosed in Alabama cases upholding the verdict or ordering conditional or unconditional new trials. The very term "excessive" denotes a quantity "exceeding the usual, proper or normal," *Webster's Third New International Dictionary* 792 (unabridged ed.), words that manifestly contemplate comparison. The Alabama Supreme Court has expressly approved such comparisons. *See Aetna Life Insurance Co. v. Lavoie*, 505 So.2d 1050, 1053 (Ala.1987) (ordering remittitur after, among other things, "making a comparative analysis with other awards allowed in similar cases"); *see also Robbins v. Voigt*, 280 Ala. 207, 215, 191 So.2d 212, 219 (1966); *Donald v. Matheny*, 276 Ala. 52, 59, 158 So.2d 909, 915 (1963) (suggesting that comparison of verdicts is a legitimate consideration so long as differences in the value of money over time are taken into account).

(7) Despite much citation and argument, plaintiffs have not directed the Court to any Alabama case that declined to require a remittitur or a new trial in the face of a ratio of punitive to compensatory damages even remotely approaching those obtaining in this case. The most skewed ratio plaintiffs have located is that of 303 to 1. *See Aetna Life Insurance Co. v. Lavoie*, 505 So.2d 1050 (Ala.1987). This ratio is unpersuasive for two reasons. First, it is approximately 6 to 10 times less extreme than those in this case. More importantly, the ratio represents a comparison of punitive to compensatory damages *after* the Court ordered a remittitur of $3,000,000. The ratio of punitive to compensatory damages as assessed by the jury, which is the relevant ratio in determining passion or prejudice, was approximately 2,121 to 1. This ratio, which falls between the two ratios in this case, did not withstand judicial scrutiny "upon making a comparative analysis of other awards allowed in similar cases." *Id.* at 1053.

### D. *Amount of Remittitur.*

The parties agree that, once the appropriateness of a remittitur is deter-

mined, federal law determines the amount of remittitur. Under the prevailing federal standard, the Court may order a remittitur only in an amount sufficient to decrease the award to "the maximum which the jury could reasonably find." *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033, 1047 (5th Cir.1970), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). This "maximum reasonable recovery" rule is not equivalent to the amount the particular trial judge believes to be a "fair" award, *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1307 (11th Cir.1984), since such a standard would essentially leave the trial judge free to substitute his or her judgment for that of the jury.

The Court, having heard the evidence and argument of counsel, and having considered the parties' briefs and other documents, concludes that the maximum reasonable recovery with respect to the Jackson plaintiffs is $58,305.96 in compensatory damages and $300,000 in punitive damages, a total of $358,305.96. The Court further concludes that the maximum reasonable recovery with respect to plaintiff McLean is $30,560.15 in compensatory damages and $150,000 in punitive damages, a total of $180,560.15.

### IV. CONCLUSION

Defendant's motion for judgment notwithstanding the verdict is DENIED. Defendant's motion for new trial is GRANTED, conditioned upon the refusal of the Jackson plaintiffs to remit $4,741,694.04 and/or of plaintiff McLean to remit $2,369,439.85. If either plaintiff agrees within thirty days of the date of this order to remit these sums, defendant's motion for new trial shall be denied with respect to that plaintiff. If one or more plaintiffs refuses within the specified time to remit the sums noted above, defendant's motion for new trial will be granted as to such plaintiff or plaintiffs on the issue of damages under plaintiffs' tort theories only.